## CARRAU v. O'CALLIGAN et al.

(Circuit Court of Appeals, Ninth Circuit. September 14, 1903.)

### No. 925.

1. FEDERAL COURTS—EQUITY JURISDICTION—SETTING ASIDE PROBATE OF WILL.

   A federal court of equity is without jurisdiction of a suit to set aside the probate of a will, unless by the law of the state a suit in equity for the purpose may be maintained in a state court, in which case a similar suit may be maintained in a federal court, where the requisite diversity of citizenship and other jurisdictional facts exist.

2. SAME—WASHINGTON STATUTE.

   By the Constitution and Statutes of Washington the superior court in the county of which a decedent was a resident at the time of his death is vested with probate jurisdiction over his estate, and provision is expressly made for the contest, within one year, of any will theretofore admitted to probate, for any cause affecting the validity of the will, by petition to the superior court having jurisdiction, in which contest issues are required to be made up, tried, and determined in that court; and it is further provided that, if no person shall so appear within the time limited, the probate of such will shall be binding. *Held,* that under such statutes the contest of a will is strictly a probate proceeding, and the proper forum for its determination is that department of the superior court having jurisdiction of the estate and engaged in its administration; that such a proceeding is not a suit between parties within the general jurisdiction of the superior court, or which can be maintained in a federal court.

3. PARTIES—SUIT TO ESTABLISH HEIRSHIP.

   To a suit to set aside the probate of a will and establish the status of plaintiffs as heirs of the decedent, other persons, claiming to be sole heirs, and therefore adversely to plaintiffs, and who have asserted their claims by appropriate proceedings in the probate court, are indispensable parties.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

For opinion below, see 116 Fed. 934.

The appellees were complainants in the court below in a suit to which Terrence O'Brien, as administrator of the estate of John Sullivan, deceased, and Marie Carrau, were made defendants. In their bill, after alleging the complainants to be British subjects and the defendants to be citizens of the United States and residents of the state of Washington, and the defendant Terrence O'Brien to be the duly appointed, qualified, and acting administrator of the estate of the deceased, Sullivan, they averred: That on the 26th day of September, 1900, Sullivan died in the city of Seattle, state of Washington, intestate, leaving therein real property of the value of over $400,000, and personal property of the value of more than $20,000. That Sullivan left surviving him no widow, children, or lineal descendants, nor father, mother, sister, brother, uncle, aunt, nephew, niece, nor any granduncle nor grandaunt, nor any grandnephew or grandniece, nor any ancestor, lineal or collateral, nor any first cousins other than the complainants, nor any relative whomsoever as nearly related to him as the complainants. That each of the complainants is a first cousin of the deceased, Sullivan, and that they are his only heirs at law and next of kin. That shortly after Sullivan's death a special administrator of his estate was appointed by the superior court of King county, Wash., who took charge of the estate until some time in November, 1900, when the defendant O'Brien was by that court duly appointed general administrator of the estate. That O'Brien immediately qualified as such administrator, and entered upon the discharge of his duties as such.

¶ 1. See Courts, vol. 13, Cent. Dig. §§ 797, 798.

That the defendant Marie Carrau, and a relative of hers by the name of Louis Daussat, shortly after the appointment of the special administrator of the estate of Sullivan, filed a petition in the superior court of King county, wherein they alleged that Sullivan died in that county without leaving any will, and seised of an estate in the county, consisting of real and personal property, exceeding in value the sum of $400,000, and claiming that Sullivan was indebted to them in about $35 for board, and as such creditors they prayed that one I. D. McCutcheon be appointed administrator of the estate. That various other persons, some of whom are named in the bill, filed petitions alleging that Sullivan died seised and possessed of real and personal property in King county, that he left no will, and praying the appointment of other persons than McCutcheon as administrator of the estate. That the several petitions came on for hearing before the court, and at such hearing Mc-Cutcheon declined to be appointed administrator, and at the request and in behalf of Daussat and Marie Carrau asked the appointment of one B. R. Brierly as such administrator. That upon the hearing of the proofs offered in support of the various petitions the superior court of King county appointed the defendant Terrence O'Brien administrator of the estate, and denied the prayers of all the other petitions. That after the appointment and qualification of O'Brien as such administrator the defendant Marie Carrau and Louis Daussat, and their relatives, Augustine Daussat and Hermance Carrau, combined and confederated together for the purpose of manufacturing a pretended nuncupative will of Sullivan in favor of Marie Carrau, under which pretended nuncupative will Marie Carrau is claiming to be the sole legatee and devisee of all the property of the deceased, Sullivan; and that it is and has been the intention of the said Marie Carrau, Hermance Carrau, Louis Daussat, and Augustine Daussat to carry out such conspiracy, and thereby obtain for themselves all the property of Sullivan by means of false testimony, and by the manufacture of evidence to support the pretended nuncupative will. That Sullivan at the time of his death was a bachelor, of the age of 60 years, and had had only a very short acquaintance with Marie Carrau, Hermance Carrau, Louis Daussat, and Augustine Daussat, but that at the time of his death he was temporarily lodging at the house of Daussat, at which house Marie Carrau also resided, and at which time she was teaching Sullivan French, he then contemplating a trip to France, from which country he had but recently returned with the intention of revisiting it at an early date. That, after failing to procure the appointment of the person whom they had nominated as administrator, the said Louis Daussat and Marie Carrau began to circulate reports that Sullivan had made a nuncupative will at 11 o'clock on the night of the 25th day of September, 1900. That such pretended nuncupative will had been reduced to writing at half past 11 o'clock that night, and had been signed by the said Marie Carrau, Louis Daussat, Augustine Daussat, and Hermance Carrau as witnesses after the death of Sullivan on the 26th day of September, 1900. That on the 8th day of March, 1901, the said Marie Carrau filed in the superior court of King county, Wash., a verified petition, wherein she stated that she had heard the said petition read, knew the contents thereof, and knew the same to be true, which petition alleged: "That said John Sullivan died on the 26th day of September, A. D. 1900, at Seattle, county of King, state of Washington, and was at the time of his death of sound mind and disposing memory. That he left a last will and testament, to wit, a nuncupative will. That six months have not elapsed since the testamentary words were spoken by decedent. That said testamentary words, or the substance thereof, were addressed to Louis Daussat, Augustine Daussat, and Hermance Carrau at about eleven o'clock p. m. of the 25th day of September, 1900, and were as follows: 'I want you to remember and witness that I will all my property and personal effects, worth many thousands of dollars, to be the money and property of your sister, Marie Carrau. I am sick, and we know not what may happen.' That said testamentary words were thereafter reduced to writing, which said writing accompanies this petition. That such testamentary words were spoken and such nuncupative will was made at the time of the last sickness, and at the dwelling house of deceased, wherein deceased had resided for more than ten days immediately preceding his death and the speaking of said words. That said will was made at or about the hour of eleven o'clock p. m. on the 25th day of September,

1900, the night before decedent's death, and at the time of his last sickness, and while decedent was in actual contemplation, expectation, and fear of death, and at the time of pronouncing such testamentary words constituting such nuncupative will as aforesaid the decedent did bid the three following named persons, who were then and there present by and at his request, to bear witness that such was his will, to wit, Louis Daussat, Augustine Daussat, Hermance Carrau. That decedent had been sick for several days immediately preceding the making of said will, and was still sick at said time, and in his last sickness as aforesaid, and died within twelve hours after said will was made, published, and declared. That no one was named in said will as the executor thereof. That decedent was a bachelor, and left no widow, heirs, or next of kin, so far as known to your petitioner. That decedent left personal property of the value of fifty thousand dollars ($50,000), and real estate in said county of King of the probable value of four hundred and fifty thousand dollars ($450,000). Wherefore petitioner prays that said will be admitted to probate. [Signed] Marie Carrau, Proponer and Petitioner."

The bill further alleges that immediately upon the filing of that petition a citation was issued by order of the superior court of King county, Wash., and placed in the hands of the sheriff of that county for service upon the widow and next of kin of the deceased, Sullivan, and that the sheriff immediately returned the citation with his return indorsed thereon to the effect that he was unable to find such persons or any of them in King county, and immediately thereupon the superior court of King county assumed to admit the pretended nuncupative will to probate, and that said pretended nuncupative will now stands as legally probated in the records of the superior court of King county, state of Washington; that the said superior court, in assuming to probate the said nuncupative will, acted wholly without jurisdiction in the premises; that it was without jurisdiction to hear any evidence or to take any steps for the probate of such nuncupative will wherein the estate bequeathed exceeded the value of $200; that the said superior court was also without jurisdiction for the reason that no legal citation had been issued out of the court, and because 10 days had not elapsed between the filing of the pretended will and the hearing of the pretended proof offered in its support; that under the laws of the state of Washington a nuncupative will is invalid where the estate bequeathed exceeds the value of $200, and that a nuncupative will, even if valid, cannot dispose of real estate; that the said Marie Carrau has filed a petition in the superior court of King county, Wash., wherein she prays that the whole of the estate of the deceased, Sullivan, be distributed to her; and it is alleged upon the information and belief of the complainants that the said court will, on the 21st day of June, 1901, make and enter a decree of distribution distributing the whole of the estate to said Marie Carrau upon her executing a bond for the payment of her proportion of the indebtedness of the estate; that the estate is very slightly indebted, except in the sum of $60,000 to the United States Mortgage & Trust Company, secured by mortgage upon the property known as the "Sullivan Block" in Seattle, which, with the land upon which it is erected, is of the value of upwards of $300,000, and that the administrator of the estate, unless restrained by the court below, will surrender to said Marie Carrau all of the property of the said estate, who will appropriate the same to her own use and benefit, including the rents, issues, and profits of the real estate, amounting to $25,000 a year, all of which will be lost to the complainants because of the insolvency of the defendant Marie Carrau.

The prayer of the bill is, among other things, for a decree adjudging the pretended nuncupative will null and void; that the complainants are the only heirs at law of the deceased, Sullivan, and entitled to receive the whole of his estate, and that the defendant Terrence O'Brien, as administrator of the estate, be enjoined from turning over any of the property to the defendant Marie Carrau, or to any other person or persons than the complainants.

The answer of the defendant Terrence O'Brien, administrator of the estate, is to the effect that he has no knowledge concerning any of the matters stated in the bill, and that he has no interest in the controversy except such as he, as administrator, is by law required to have.

The answer of Marie Carrau, among other things, denies any relationship of either of the complainants with the deceased, Sullivan, admits the relation-

ship as alleged of the defendant Marie Carrau, Louis Daussat, Augustine Daussat, and Hermance Carrau, but denies that they or either of them combined or confederated together for the purpose of making a pretended nuncupative will of the deceased Sullivan in favor of the defendant Marie Carrau. The answer of this defendant puts in issue all of the averments of the bill in respect to fraud and conspiracy, and sets up that Sullivan was engaged to be married to her, and that they were to have been married on the 1st day of October, 1900; that Sullivan did make and publish the nuncupative will in question, by which he devised to her all of his property, which will was duly admitted to probate by the probate court of King county, Wash.; denies that either the defendant Marie Carrau or Louis Daussat ever sought the appointment of any one as administrator of the estate of the deceased, or ever circulated the reports alleged in the bill, and alleges that immediately after the death of Sullivan the defendant Marie Carrau informed "her spiritual adviser" that Sullivan did make and publish an oral will devising and granting to her all of his property, and that she never attempted to conceal the fact of the making and publishing of such a will; that she caused to be consulted a regular practicing attorney in Seattle in respect to the validity of such will, and was by him advised that an oral will was not valid under the laws of the state of Washington; that it was not until several weeks thereafter that she was advised of the fact that the law of that state did authorize the making of a verbal will, and that the will so alleged by her to be made by the deceased was valid, and that the same devised his entire estate to her. The answer of the defendant Marie Carrau also denies that the superior court of King county, Wash., acted wholly or at all without jurisdiction in probating the alleged nuncupative will, but, on the contrary, alleges that it had and has the exclusive jurisdiction in the premises. The answer of this defendant also sets up lack of jurisdiction in the court below over the subject-matter of the present suit, and denies that under the laws of the state of Washington a nuncupative will is invalid in respect to its attempted disposition of real property, or is invalid where the estate exceeds the value of $200, but alleges that such a will, duly proved and probated, devises, under the laws of that state, both real and personal property to any amount in value, by virtue of a statute of the state reading as follows: "No nuncupative will shall be good when the estate bequeathed exceeds the value of two hundred dollars, unless the same be proved by two witnesses who were present at the making thereof, and it be proven that the testator at the time of pronouncing the same did bid some person present to bear witness that such was his will, or to that effect, and such nuncupative will was made at the time of the last sickness and at the dwelling house of the deceased, or where he had been residing for the space of ten days or more, except where such person was taken sick from home and died before his return." 1 Ballinger's Ann. Codes & St. § 4605. The answer of the defendant Marie Carrau further sets forth the various steps taken in the superior court of King county, Wash., sitting as a court of probate in the matter of the estate of the deceased, Sullivan, including the averment: "That a large number of persons have filed in re estate of John Sullivan, deceased, in the superior court of the state of Washington for King county their verified claims claiming and alleging each of them to be the sole heir of said John Sullivan, deceased, as follows, to wit: Eugene Timothy Sullivan, residing at Olympia, Washington, in person on his own behalf, on September 3, 1901. Mary Sullivan, Butte, Montana, by Peter Breen, Alexander Mackel, and James A. Bradford, her attorneys, on March 12, 1901. Katherine Riordan, Mary Riordan, and Margaret McGrath née Margaret Riordan, Cork, Ireland, by John B. Ault, June 19, 1901. John Sullivan and Mary Sullivan, residing in Cork, Ireland, by Roberts & Leehey and J. P. Gleason, their attorneys, April 3, 1901. Jeremiah Sullivan, James Sullivan, Margaret Mahoney, Catherine Sweeney (spinster), John Sweeney, Patrick Sweeney, Daniel Sweeney, and Michael Sweeney, residing in Ireland, by Wilshire & Kenaga, their attorneys." The answer of the defendant Marie Carrau also sets up that prior to the commencement of the present suit the complainants herein did "file their verified petition in equity, and appearing by Piles, Donworth & Howe and C. H. Farrell, their attorneys, who are also complainants' solicitors here, contesting the nuncupative will in the complaint and defendant's answer described, and which petition was duly filed in the

superior court of the state of Washington for King county, being No. 32,664, and entitled 'In the matter of the Estate of John Sullivan, Deceased. Johanna Callighan and Edward Corcoran, Petitioners, vs. Terrence O'Brien, as Administrator of the Estate of John Sullivan, Deceased, and Marie Carrau, Respondents,' and caused to be issued a citation therein, under the seal of said superior court for King county, Washington, to the respondents therein, being the defendants herein, and caused said citation to be regularly served on respondents therein and these defendants on the same day; and that this defendant and said administrator have each appeared in said action, resisting said contest; and said action so as aforesaid, contesting the validity of said will, was pending at the time of the bringing of this action, and is still pending, in said superior court of King county, Washington, undetermined. And that the following named persons have also filed petitions in re the estate of John Sullivan, deceased, in the superior court of the state of Washington for King county, to contest the validity of said will, to wit: Catherine Riordan, Mary Riordan, and Margaret McGrath, née Margaret Riordan, filed June 20, 1901, by their attorney, John B. Ault, and which are still pending in said court. The state of Washington, by its attorney general, filed the 20th day of June, 1901, and which is still pending in said court. Mary Sullivan, by James E. Bradford, her attorney, filed July 2, 1901, which is still pending in said court. And that each of said petitioners have caused citations to issue and be served upon said O'Brien, as administrator, and this answering defendant as such legatee, under said will; and that each of said petitions so as aforesaid contesting the validity of said nuncupative will are still pending undetermined in the superior court of the state of Washington for King county; and that this answering defendant in each of said actions contesting the validity of said will is defending said will and her rights thereunder."

The complainants filed a replication to the answer of the defendant Marie Carrau, evidence was taken upon the issues made, the cause was thereafter argued and submitted upon the pleadings and briefs, on consideration of which the court below "adjudged and decreed as follows, to wit:

"(1) That John Sullivan, aged about sixty (60) years, late of the city of Seattle, King county, state of Washington, died in said city on the 26th day of September, 1900, intestate, the owner of personal property and real estate situated in said county, including the property known as the 'Sullivan Building,' and leaving no issue, nor any descendant, nor wife, nor father, nor mother, nor sister, nor brother, nor uncle, nor aunt, nor granduncle, nor grandaunt, nor ancestor, lineal or collateral, nor any person of nearer kin than first cousin, and never having married, but leaving surviving him the complainant Hannah O'Callaghan, otherwise known as Johanna Callaghan, of Cork, Ireland, his first cousin, and one of his next of kin, a lawful child of his mother's deceased sister, Bridget Callaghan; and also leaving surviving him his first cousin and one of his next of kin in equal degree with said Johanna Callaghan, the other complainant, Edward Corcoran, otherwise known as Ned Corcoran, of Dublin, Ireland, a lawful child of Margaret Corcoran, a deceased sister of the mother of said John Sullivan.

"(2) It is further ordered, adjudged, and decreed that on November 19, 1900, the defendant Terrence O'Brien, a citizen of the United States and of the state of Washington, was, by the superior court of the state of Washington for King county, in the matter of the estate of John Sullivan, deceased, numbered in said court 3,664, duly appointed as administrator of the estate of said John Sullivan, deceased, and ever since his said appointment he has been and now is the duly qualified and acting administrator of said estate.

"(3) It is further ordered, adjudged, and decreed that the alleged nuncupative will claimed by the defendant Marie Carrau, a citizen of the United States and of the state of Washington, to have been made by the said John Sullivan on the 25th day of September, 1900, at about eleven o'clock p. m., in the following words, to wit: 'I want you to remember and witness that I will all my property and personal effects, worth many thousands of dollars, to be the money and property of your sister, Marie Carrau. I am sick, and we know not what might happen'—was never made by said John Sullivan, nor did the said John Sullivan speak said words, or any of them, or any words of such import, nor did he make any will whatever.

"(4) It is further ordered, adjudged, and decreed that the superior court of the state of Washington for King county never acquired jurisdiction to probate said alleged nuncupative will. Said court never made any lawful order for the issuance of a citation, nor was any lawful citation ever issued, nor was any notice of any proceeding to probate said alleged will ever given to or had by any one, nor did said court ever acquire jurisdiction to hear any evidence for the probate of said alleged will, but said court acted wholly without jurisdiction in the matter of the probate of said alleged will, and the certificate of probate of said alleged will granted by said court on the 8th day of March, 1901, and the decree of said court purporting to have been rendered and entered on said 8th day of March, 1901, admitting said alleged will to probate as the last will and testament of said John Sullivan, deceased, were made and rendered wholly without jurisdiction, and said proceedings and all proceedings in the matter in said superior court numbered 3,664, entitled 'In the matter of the Estate of John Sullivan, Deceased,' in so far as they relate to the alleged probate of said alleged nuncupative will, are null and void, and of no force and effect.

"(5) It is further ordered, adjudged, and decreed that the complainants Johanna Callaghan and Edward Corcoran were at the time of the commencement of this action and now are aliens, subjects of the King of Great Britain and Ireland, and first cousins and next of kin of said John Sullivan, deceased, and are entitled to share equally in the assets of the estate of said John Sullivan, deceased, as his first cousins and next of kin, and the share of each of said complainants in said estate exceeds, and at the time of the commencement of this suit exceeded, the sum and value of two thousand dollars ($2,000), exclusive of interest and costs, and the value of said estate has at all times exceeded and now exceeds the sum of three hundred thousand dollars ($300,000), exclusive of interest and costs, and the defendant Terrence O'Brien, as administrator of the estate of said John Sullivan, deceased, is directed to recognize the right of each of said complainants to share in said estate as a first cousin of said deceased and as one of the next of kin of said deceased, John Sullivan.

"(6) It is further ordered, adjudged, and decreed that the defendant Marie Carrau, and all persons claiming under her or representing her in any manner whatever, are hereby perpetually restrained and enjoined from setting up or asserting in any manner whatsoever any claim, right, or title to or interest in the estate of said John Sullivan, deceased, or in any part thereof, under said alleged nuncupative will, and under the alleged probate thereof, or under either thereof, and from setting up, asserting, or in any manner whatsoever making any claim whatsoever under said alleged nuncupative will and the alleged probate thereof, or either thereof, in any court or elsewhere, except in a court having appellate jurisdiction to review this decree.

"(7) It is further ordered, adjudged, and decreed that the complainants recover from the defendant Marie Carrau their costs and disbursements in this suit sustained, the same to be taxed by the clerk of this court."

J. P. Houser, J. W. Robinson, and Lorenzo S. B. Sawyer, for appellant.

Samuel H. Piles, George Donworth, James B. Howe, Piles, Donworth & Howe, and C. H. Farrell, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

We are of the opinion that the court below was without jurisdiction of the subject-matter of the suit, and, further, that all necessary parties were not before the court, some of whom, if made parties, would have ousted the court of jurisdiction. On both of these grounds we think the court below should have dismissed the bill at the complainants' cost.

In the Case of Broderick's Will, 21 Wall. 503, 509, 22 L. Ed. 599, the Supreme Court declared it to be "undoubtedly the general rule, established both in England and this country, that a court of equity will not entertain jurisdiction of a bill to set aside a will or the probate thereof." And the court added:

"Whatever may have been the original ground of this rule (perhaps something in the peculiar constitution of the English courts), the most satisfactory ground for its continued prevalence is that the constitution of a succession to a deceased person's estate partakes in some degree of the nature of a proceeding in rem, in which all persons in the world who have any interest are deemed parties, and are concluded as upon res judicata by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with least chance of injustice and fraud; and that the result attained should be firm and perpetual. The courts invested with this jurisdiction should have ample powers both of process and investigation, and sufficient opportunity should be given to check and revise proceedings tainted with mistake, fraud, or illegality. These objects are generally accomplished by the constitution and powers which are given to the probate courts, and the modes provided for reviewing their proceedings. And one of the principal reasons assigned by the equity courts for not entertaining bills on questions of probate is that the probate courts themselves have all the powers and machinery necessary to give full and adequate relief."

But wherever, by the law obtaining in a state, customary or statutory, suits in equity may be maintained in the courts of such state to set aside the probate of a will, similar suits may be maintained by original process in a federal court, where the requisite diverse citizenship and other requisite conditions exist. Thus, in the case of Richardson et al. v. Green et al., so much relied upon by counsel for the appellees (61 Fed. 423, 9 C. C. A. 565), decided in this court by Judges Knowles and McKenna, the latter now an associate justice of the Supreme Court, and which was a suit brought in the Circuit Court of the United States for the District of Oregon for the purpose, in part, of obtaining a decree annulling the probate of a certain will that had been theretofore probated in one of the county courts of that state on the ground that the probated will was a forgery, this court affirmed the decree of the lower court which canceled the will; thus sustaining the jurisdiction of the federal courts in the matter. But it did so for the reason, as plainly appears from the opinions of the judges deciding the case, that it was found that while, under the laws of Oregon, the county courts of that state were given exclusive jurisdiction in the first instance to take proof of wills, there was no provision of the Oregon law "to warrant any contest upon the validity of a will at the time the same was being probated," but authority in any one interested in the estate to attack the will by an independent suit at any time after its probate. This court, having found that such a remedy existed in the Oregon courts, very properly held that it could be exercised by the United States Circuit Court for that state, the requisite diverse citizenship and other requisite conditions existing. But the laws of the state of Washington in respect to the probate of wills and their contest are quite

different.   By section 6 of article 4 of the Constitution of that state the superior courts of the state are given original jurisdiction "of all matters of probate," as well as of all cases in equity and of all cases at law not specially excepted.   And by a statute of the state it is provided that:

"The superior courts in the exercise of their jurisdiction in matters of probate shall have power:

"(1) To take proof of wills and to grant letters testamentary and of administration;  *  *  *

"(2) To settle the estates of deceased persons. and the accounts of executors, administrators, and guardians;

"(3) To allow or reject claims against the estates of deceased persons, as hereinafter provided;

*  *  *  *  *  *  *  *  *  *  *  *

"(5) To award process and cause to come before them all persons whom they may deem it necessary to summon, whether parties or witnesses, or who, as executors, administrators, or guardians, or otherwise, shall be entrusted with or in any way accountable for any property belonging to any minor, orphan, or person of unsound mind, or estate of any deceased person;

"(6) To order and cause to be issued all writs which may be necessary to the exercise of their jurisdiction."   2 Hill's Ann. St. & Codes of Washington, § 845.

By section 851 of the same statutes it is provided that:

"Wills shall be proved and letters testamentary or of administration shall be granted:

"(1) In the county of which deceased was a resident or had his place of abode at the time of his death.

"(2) In the county in which he may have died, leaving estate therein and not being a resident of the state.

"(3) In the county in which any part of his estate may be, he having died out of the state, and not having been a resident thereof at the time of his death."

Various provisions follow concerning the production of and petition for the probate of wills, and among them section 861, which provides that:

"Applications for the probate of a will or for letters testamentary, may be made to the judge of the superior court and he may also at any time issue all necessary orders and process to enforce the production of any will."

By section 862 of the same statutes it is provided that:

"When any will is exhibited to be proven the court may immediately receive the proof and grant a certificate of probate, or if such will be rejected, issue a certificate of rejection."

Section 867 is as follows:

"All the testimony adduced in support of the will shall be reduced to writing, signed by the witnesses and certified by the judge of the court."

And the next section provides for the recordation, in a book to be kept for that purpose, of all wills admitted to probate.

Section 872 of the same statutes is as follows:

"If any person interested in any will shall appear within one year after the probate or rejection thereof, and by petition to the superior court having jurisdiction, contest the validity of said will, or pray to have the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will or to the rejection thereof.   Issues shall be made up, tried, and determined in said court respecting the competency of the deceased to make a last will and testament, or respecting the execution by the deceased

of such last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the validity of such will."

The next section (873) provides that:

"Upon the filing of the petition referred to in the next preceding section a citation shall be issued to the executors who have taken upon them the execution of the will or to the administrator with the will annexed, and to all legatees named in the will residing in the state or to their guardians if any of them are minors, or to their personal representatives if any of them are dead, requiring them to appear before the court on a day therein specified, to show cause why the petition should not be granted."

By section 874 it is declared that:

"If no person shall appear within the time aforesaid, the probate or rejection of such will shall be binding, save to infants, married women, persons absent from the United States or of unsound mind, a period of one year after their respective disabilities are removed."

By section 876 it is provided that:

"If, upon the trial of said issue, it shall be decided that the will is for any reason invalid or that it is not sufficiently proved to have been the last will of the testator, the will and the probate thereof shall be annulled and revoked."

It is thus seen that by the statutes of the state of Washington provision is expressly made for the contest, within a stated time, of any will theretofore admitted to probate, for any cause affecting the validity of the will, by petition to the superior court having jurisdiction, in which contest issues are required to be made up, tried, and determined in that court, with a provision to the effect that, if no person shall so appear within the time limited, the probate of such will shall be binding. And such we understand to be the effect of the decision of the Supreme Court of Washington in the case of State ex rel. Stratton, Attorney General, v. Tallman, Judge of the Superior Court, 65 Pac. 545, concerning this very estate of Sullivan. It appears from the opinion of the court in that case that the Attorney General of the state filed a motion in the superior court having jurisdiction of the estate in question "praying for the vacation of the order admitting the will to probate, and to set aside all the proceedings leading up to the probate of the will, upon the grounds that the court acquired no jurisdiction to hear any evidence in support of the will; because no citation was issued as required by law, because the citation was issued on the day it bears date and at the time the will was presented to the court, and immediately returned by the sheriff without making any effort to find any of the heirs of deceased, or any person interested in the estate; and because deceased never made or attempted to publish and declare the will." The probate court having declined to consider or decide the motion on the ground that the state could not properly appear in the proceedings, the Attorney General applied to the Supreme Court of the state for a mandate directing the probate court to consider and determine the motion, and in denying the writ that court said:

"The extraordinary writ will not be issued if relator has a plain, speedy, and adequate remedy at law. Relator urges that under subdivision 8, § 4620, 1 Ballinger's Ann. Codes & St., the state is interested in testing the validity of the will, because, in the event of the establishment of intestacy and upon the failure of heirs the estate escheats to the state. The effect of the order

admitting a will to probate, either written or nuncupative, is declared in section 6108, 2 Ballinger's Ann. Codes & St., 'as effectual in all cases as the original would be if produced and proven,' and such effect by section 6112 is declared binding upon all persons if its validity shall not be contested within one year after the probate or rejection of the will. Assuming that the state may have such contingent interest in the estate as to have the real truth of the existence and validity of the will determined, it appears there is a plain procedure, which is speedy and adequate, pointed out in section 6110, Id., by which issues may properly be made up and tried and determined respecting all questions affecting the regularity of the execution or of the validity of the will, and the superior court entertaining such a suit may fully protect such rights in the estate by such stay of proceedings in the procedure in probate as may be necessary or effective. The conclusion, therefore, is that the appropriate procedure is designated in section 6110, supra, and there is no necessity shown for a mandate from this court." 65 Pac. 546.

It is true that the court, in speaking of the contest authorized by section 6110, Ballinger's Ann. Codes & St., uses the word "suit," which was manifestly an inapt expression; but that the court did not thereby mean that such contest should be by an independent suit in a department of the superior court of the state not charged with the administration of the estate is very clearly shown by its express declaration to the effect that the appropriate procedure is designated in section 6110 of the state statutes, which in terms declares that such contest shall be initiated "by petition to the superior court having jurisdiction"—that is to say, to the superior court having jurisdiction of the estate—in which the required issues shall be made up, tried, and determined, and which court, having such jurisdiction, may direct "such stay of proceedings in the procedure in probate as may be necessary." This, we think, is the plain meaning of the decision of the Supreme Court of the state in the case of State ex rel. Stratton, Attorney General, v. Tallman, Judge, supra. That court surely did not mean to hold that one department of the superior court of the state could interfere with the due proceedings of a co-ordinate branch of the same court in the matter of an estate of which it acquired the first, and, indeed, the exclusive, jurisdiction, by the filing therein of a petition for the probate of an instrument alleged to be the will of one dying within its jurisdiction, and alleged to have left real and personal property therein.

Subsequent to the above decision of the Supreme Court of the state of Washington the Attorney General of the state moved the superior court that was administering the estate of the deceased, Sullivan, for an order directing citation to issue as prayed in his petition for the contest of said alleged will, which the probate court denied on the ground "that the state of Washington has no right at this time to make said petition contesting said will and file the same, or appear in said matter, and is not a proper party to appear in said probate proceeding to contest said will, or for any purpose whatever." Thereupon the Attorney General, on behalf of the state, again applied to the Supreme Court of the state for a writ of mandate to compel the issuance of such citation. In denying the writ on the ground that the petitioner had a remedy at law by appeal from the action of the probate court, the Supreme Court of Washington said:

"A number of questions are discussed in the briefs of the respective counsel relating to the power of the Attorney General to appear in behalf of the state

In such a proceeding as that instituted in the superior court, and also as to the right of the state to appear by any one in such a proceeding. It is contended by respondent that the right of the state to assert control of property alleged to have escheated is not an active, but a passive, right, and that while the proper probate court is engaged in determining the legal disposition to be made of the property the state has no right to interfere, but that the assertion of the state's claim becomes active when it has been lawfully determined that there are neither heirs nor legatees. The examination of these questions would involve extended discussion, and it is unnecessary to pass upon them here, for the reason that we think the relator has a remedy at-law by appeal." State ex rel. Stratton, Attorney General, v. Tallman, Judge, 69 Pac. 1101.

Here again the Supreme Court of Washington clearly indicates that the proper court, under the statutes of the state, in which to contest the validity of the will in question, is that department of the superior court exercising probate jurisdiction and having control of the estate in question; for it would hardly have held that the relator had a remedy at law by appeal from the ruling of that court if there was no jurisdiction of his contest in the court in which he was proceeding. "The powers of the superior court in respect to its probate jurisdiction," said the same court in Re Alfstad's Estate, 27 Wash. 175, 182, 67 Pac. 593, "are the same as they would be if it were in fact a separate probate court. Proceedings in probate matters, in actions in equity, and at common law are distinct, and should not be intermingled, except in cases specially authorized by law." It is true that in the subsequent cases of Browder v. Phinney, 70 Pac. 264, and In re Murphy's Estate, 70 Pac. 107, the Supreme Court of Washington said:

"In this state we have no probate court, properly speaking, as distinguished from the court that entertains jurisdiction of other matters. The court of general jurisdiction also hears and determines probate matters. Matters pertaining to probate are referred to what is called 'probate' procedure, as distinguished from what is denominated 'civil' or 'criminal' procedure. But when the court, sitting in a probate proceeding, discovers in a petition the statement of facts which forms the basis of a controversy, we see no reason why it may not settle the issues thereunder when an appearance has been made thereto, and then proceed to try it in a proper manner, as any other civil action. The court may require the proceeding to be separately docketed, if, when the issues are formed, it appears to be such as should be thus docketed. Whether a citation should have issued on the strength of this petition or not, it is nevertheless true that appellant responded to the citation, and appeared generally by demurrer to the petition, and asked its dismissal simply on the ground that the court could not hear it as a probate proceeding. We think it was not necessary to sustain the demurrer and dismiss the proceeding on that ground. But under our liberal practice as to the form of actions the petition could be treated as in the nature of a complaint. The issues could be framed thereunder, and the cause tried without requiring another statement of the same facts under some other form or name. If it developed that it was not properly a probate proceeding, it would not be treated as such."

In the case at bar the contest of the will is strictly a probate proceeding, and the proper forum for its determination is, as we think the Supreme Court of Washington indicated in the two cases above cited relating to this very estate, that department of the superior court having jurisdiction of the estate, and actually engaged in its administration.

We concur in the opinion expressed by the Supreme Court of California in the matter of Joseph's Estate, 50 Pac. 768, that a petition to probate a will is the beginning of a special proceeding, and that "the order admitting the will to probate is not final so long as proceedings may be taken (under the statute) to revoke the probate. In all subsequent stages the contest is but a part of the proceeding to probate the will, and is not a new and distinct proceeding. The subject-matter is the same, and the ultimate issue, to wit, whether the will in question should stand as probated, is the same." In our opinion, there is nothing in the case of Gaines v. Fuentes et al., 92 U. S. 10, 23 L. Ed. 524, to sustain the jurisdiction of the federal court in the present suit. That case came before the Supreme Court of the United States on writ of error to the Supreme Court of the state of Louisiana. The action was brought in the Second District court of the parish of Orleans, which, under the laws of Louisiana, was invested with jurisdiction over the estates of deceased persons, and of appointments necessary in the course of their administration. In form it was an action to annul an alleged will of one Daniel Clark, the father of the plaintiff in error in the case, and to recall the decree of the court by which it was probated. The complaint, or petition, as it was called, set forth that on the 18th of January, 1855, the plaintiff in error applied to the district court of the parish of Orleans for the probate of the alleged will, and that by decree of the Supreme Court of the state the alleged will was recognized as the last will of the deceased, Clark, and was ordered to be recorded as such; that this decree of probate was obtained ex parte, and by its terms authorized any person at any time, should he desire to do so, to contest the will and its probate in a direct action, or as a means of defense by way of answer or exception, whenever the will should be set up as a muniment of title; that the plaintiff in error subsequently commenced several suits against the petitioners in the Circuit Court of the United States to recover sundry tracts of land and properties of great value, situated in the parish of Orleans and elsewhere, in which they were interested, setting up the alleged will as probated as a muniment of title, and claiming under the same as instituted heir of the testator; and that the petitioners were unable to contest the validity of the alleged will so long as the decree of probate remained unrecalled. The petitioners then proceeded to set forth the grounds upon which they asked for a revocation of the will, and the recalling of the decree of probate; these being substantially the falsity and insufficiency of the testimony upon which the will was admitted to probate, and the status of the plaintiff in error, incapacitating her to inherit or take by last will from the decedent. A citation having been issued upon the petition, and served upon the plaintiff in error, she applied, in proper form, with a tender of the necessary bond, for removal of the cause to the Circuit Court of the United States for the District of Louisiana, under section 12 of the judiciary act of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 79), on the ground that she was a citizen of New York and the petitioners were citizens of Louisiana. The court denied the application, for the alleged reason that, as she had made herself a party to the proceedings in the court rela-

tive to the settlement of Clark's succession by appearing for the probate of the will, she could not avoid the jurisdiction when the attempt was made to set aside and annul the order of probate which she had obtained. The court, however, proceeded to say, in its opinion, that the federal court could not take jurisdiction of a controversy having for its object the annulment of a decree probating a will. The plaintiff in error then applied for the removal of the action on another ground, which was also denied, on the ground that the federal court could not take jurisdiction of the subject-matter of the controversy. Other parties having intervened, the applications were renewed, and again denied. An answer was then filed by the plaintiff in error, denying generally the allegations of the petition except as to the probate of the will, and interposing a plea of prescription. Subsequently a further plea was filed to the effect that the several matters alleged as to the status of the plaintiff in error had been the subject of judicial inquiry in the federal courts, and had been there adjudged in her favor. Upon the hearing a decree was entered annulling the will and revoking its probate. The judgment of the Supreme Court of the state affirming this decree was reversed on writ of error on the ground that the case should have been transferred from the parish court of Orleans to the Circuit Court of the United States, and in giving that judgment the Supreme Court of the United States held that, while the action was in form to annul the alleged will of Daniel Clark, and to recall the decree by which it was probated, it could not be treated as properly instituted for the revocation of the probate, but should be and was treated as brought against the devisee by strangers to the estate to annul the will as a muniment of title, and to restrain the enforcement of the decree by which its validity was established, so far as it affects their property, for the reason that the petitioners were not heirs of Clark, nor legatees, nor next of kin, and did not ask to be substituted in place of the plaintiff in error. "It is," said the court, "in fact an action between parties; and the question for determination is whether the federal court can take jurisdiction of an action brought for the object mentioned between citizens of different states upon its removal from a state court." The court held (92 U. S. 20, 23 L. Ed. 524) that:

"The suit in the parish court is not a proceeding to establish a will, but to annul it as a muniment of title, and to limit the operation of the decree admitting it to probate. It is in all essential particulars a suit for equitable relief—to cancel an instrument alleged to be void, and to restrain the enforcement of a decree alleged to have been obtained upon false and insufficient testimony. There are no separate equity courts in Louisiana, and suits for special relief of the nature here sought are not there designated suits in equity. But they are none the less essentially such suits; and if, by the law obtaining in the state, customary or statutory, they can be maintained in a state court, whatever designation that court may bear, we think they may be maintained by original process in a federal court, where the parties are on the one side citizens of Louisiana and on the other citizens of other states."

Not only was there no statute of Louisiana like that of the state of Washington, requiring the contest of a will admitted to probate to be initiated and prosecuted in the court having jurisdiction of the estate and charged with its administration, but it appears from the

statement of the case of Gaines v. Fuentes that the decree of probate there sought to be annulled was not only ex parte, but that by its very terms any person was authorized to contest the will, and its probate in a direct action.

The case of Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, involved the estate of Mary McAuley, deceased, who died seised of real estate in the city of Pittsburg, Pa., leaving also a large amount of personal property. As respects the latter, she died intestate, but she left the following instrument, written and signed by her:

"By request of my dear brother my house on Duquesne Way is to be sold at my death and the proceeds to be divided between 'The Home for the Friendless,' and 'The Home for Protestant Destitute Women.'"

That instrument was admitted to probate on the 12th of January, 1886, by the register of Allegheny county, Pa., as the will of Mary McAuley, and letters of administration cum testamento annexo upon her estate were issued to Alexander M. Byers. Byers proceeded with the administration of the estate, and on January 29, 1887, he filed in the register's office an account showing his receipts and expenditures, and what balance he had in his hands for distribution, amounting to a large sum of money. The account of Byers as administrator with the will annexed was examined and allowed by the register, and was presented for approval to the orphans' court of Allegheny county, and was by that court on March 7, 1887, approved and confirmed, and, no exceptions thereto having been filed, the confirmation became absolute. Thereupon, in pursuance of statutory directions, this confirmed account was put upon the audit list of the orphans' court for distribution of the balance shown to be in the administrator's hands, and the court fixed March 29, 1887, as the day to hear the case. The day before the hearing thus fixed, a bill in equity was filed in the Circuit Court of the United States for the Western District of Pennsylvania, by two citizens of Ohio, against the administrator, Byers, and other parties claiming to be interested in the estate, including the two corporations named in the probated instrument. The bill set forth the death of Mary McAuley; that there were two classes of claimants to the estate, to wit, the first and second cousins of the decedent; that the so-called will was null and void; and that there was a large amount of personal estate in the hands of the administrator, etc. The prayer was that the will and the probate be declared void, and of no effect; that the administrator be enjoined from disposing of the real estate, and from collecting the rents therefrom, and that some suitable person be appointed to take charge of it until partition; that a partition of it be had and made to and among the various parties in interest, and that the defendant Byers be directed to make a full, just, and true account of all assets in his hands; that an account be taken of the decedent's debts and funeral expenses, and the surplus distributed among the plaintiff and other parties entitled thereto; and for general relief. To this bill the administrator, Byers, filed a plea setting up the proceedings in the orphans' court, which plea was overruled by the Circuit Court. The case was then put at issue by answer and replication, and resulted in a final decree by the Circuit Court to the effect

that the real estate left by the decedent be distributed equally between the Home for the Friendless and the Home for Aged Protestant Women, and that the personal estate of the decedent be distributed among the 13 first cousins of the decedent, to the exclusion of her second cousins.

The Supreme Court held that the Circuit Court erred in taking any action or making any decree looking to the mere administration of the estate, or attempting to adjudicate the rights of citizens of the state as between themselves, but that, as it appeared that the debts of the estate had been paid, and the estate was ready for distribution, but that no adjudication had been made as to the distributees, "in that exigency the Circuit Court might entertain jurisdiction in favor of all citizens of other states, to determine and award their shares in the estate. Further than that it was not at liberty to go." 149 U. S. 620, 13 Sup. Ct. 911, 37 L. Ed. 867.

But certainly, in order to make such determination, it is essential that all adverse claimants be made parties. In the case of Byers v. McAuley it does not appear that any one interested in the estate was absent. There is in the case no suggestion of the absence of any necessary or proper party, and no question of that nature was presented or considered. In the case at bar, however, there were persons not made parties to the suit who claimed to be the sole and exclusive heirs of the deceased, and who, if made parties, would, on the ground of citizenship, oust the federal court of any jurisdiction in the premises. If any of those claims be well founded, it would, of course, result that the complainants in the court below are without any right. Those claimants were, therefore, essential parties to the controversy concerning the heirship in question, and we think counsel for the appellees altogether mistaken in saying that there is anything to the contrary in Byers v. McAuley, or in the case of Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260. The latter was a case, as stated by the Supreme Court in Byers v. McAuley, "of a bill filed by one of the distributees of an estate against the administrator and the sureties on his official bond, to obtain her distributive share in the estate of the decedent. Plaintiff was a citizen of Virginia, and the defendant a citizen of Missouri, and an administrator appointed by the probate court of one of its counties. Suit was brought in the Circuit Court of the United States for the District of Missouri. The charge in the bill was gross misconduct on the part of the administrator, and false settlement with the probate court; and that he had, by fraudulent misrepresentations, obtained a settlement with plaintiff for a sum less than she was entitled to. A demurrer to the bill was sustained in the court below, but this court held that the bill was sufficient, and that the demurrer was improperly sustained. In other words, the ruling was that the plaintiff, a citizen of another state, could apply to the federal courts to enforce her claim against an administrator arising out of his wrongful administration of the estate." To the objection that the other distributees were not made parties, the court said (7 Wall. 431, 19 L. Ed. 260):

"It is undoubtedly true that all persons materially interested in the subject-matter of a suit should be made parties to it; but this rule, like all general

rules, being founded in convenience, will yield whenever it is necessary that it should yield in order to accomplish the ends of justice. It will yield if the court is able to proceed to a decree and do justice to the parties before it without injury to absent persons, equally interested in the litigation, but who cannot conveniently be made parties to the suit. The necessity for the relaxation of the rule is more especially apparent in the courts of the United States, where, oftentimes, the enforcement of the rule would oust them of their jurisdiction, and deprive parties entitled to the interposition of a court of equity of any remedy whatever. The present case affords an ample illustration of this necessity. The complainant sues as one of the next of kin, and names the other distributees, who have the same common interest, without stating of what particular state they are citizens. It is fair to presume, in the absence of any averments to the contrary, that they are citizens of Missouri. If so, they could not be joined as plaintiffs, for that would take away the jurisdiction of the court; and why make them defendants, when the controversy is not with them, but the administrator and his sureties? It can never be indispensable to make defendants of those against whom nothing is alleged and from whom no relief is asked. A court of equity adapts its decrees to the necessities of each case, and, should the present suit terminate in a decree against the defendants, it is easy to do substantial justice to all the parties in interest, and prevent a multiplicity of suits, by allowing the other distributees, either through a reference to a master, or by some other proper proceeding, to come in and share in the benefit of the litigation."

It is plain that what is there said by the Supreme Court is no justification whatever for dispensing with parties whose asserted interest is directly opposed to that of the complainants, for the establishment of any right in the latter takes just that much from the absent claimants.

Without reference to the merits of the suit, concerning which we cannot properly indicate any views, it results that the judgment must be, and hereby is, reversed, and the cause remanded to the court below, with directions to dismiss the bill at the complainants' cost.