# CHRISTIANSON v. KING COUNTY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 67. Argued November 9, 10, 1915.—Decided December 13, 1915.

Where it sufficiently appears from the bill that jurisdiction does not depend solely on diverse citizenship, but the controversy involves the construction of an act of Congress, the decision of the Circuit Court of Appeals is not final, but an appeal lies to this court under § 241, Judicial Code.

As an organized political division of the United States, a Territory possesses only such powers as Congress confers upon it, and the legislature of a Territory cannot provide for escheat unless such provision is within the grant of authority.

A statutory authority to a Territory to legislate upon all rightful subjects of legislation includes the right to provide by legislation for escheat for failure of heirs; and so *held* as to authority given by the Organic Act of Washington Territory.

The prohibition in the Organic Act of Washington of 1853 against interference with the primary disposal of the soil had reference to the disposition of public lands of the United States, and did not limit the right of the Territory to legislate in regard to the escheat of private property for failure of heirs.

Subject to the general scheme of local Government, defined by the Organic Act and the special provisions it contains, and the right of Congress to revise, alter and revoke, the territorial legislatures have generally been entrusted with the enactment of the entire systems of municipal law of the respective Territories of the United States.

Escheat for failure of heirs has always been a familiar subject of legislation in the American commonwealths.

In determining the extent of the power to legislate delegated by Congress to a Territory under the Organic Acts, and the validity of a series of acts of the territorial legislature, it is significant if none of such acts asserting legislative power during the entire period until Statehood were ever disapproved by Congress.

Provisions for escheat for failure of heirs have proper relation to matters embraced in a law establishing probate courts and defining their jurisdiction; and so *held* that such provisions in the statutes of

Washington Territory are not invalid because the title of the probate act was not broad enough to cover escheats.

After reviewing the statutes of Washington Territory in regard to jurisdiction of probate courts, *held* that the decree of the probate court involved in this case decreeing that the property of the intestate escheat to the county for failure of heirs was within its jurisdiction and the decree properly disposed of the property.

Where the legislature has authority to establish its rule as to escheat, it also has power to suitably provide for the tribunals having jurisdiction, and the procedure for determining whether the rule is applicable in particular cases; and if other proceedings are established, office found is not necessary to effect an escheat.

Under the law of the Territory of Washington the property involved in this case escheated to the county in which it was situated.

The proceedings in the Probate Court terminating in a decree that the property of the intestate escheat to the county for failure of heirs being in accord with valid laws of the Territory even though informal, the decree was not void or subject to collateral attack.

The decree of the Probate Court attacked in this case having been entered in a proceeding *in rem* properly conducted with notice and opportunity to parties interested to appear, there was no deprivation of property without due process of law.

Where a court of competent jurisdiction in a proceeding *in rem* under a valid statute determines that there are no heirs to an intestate, the decree binds all the world, including heirs who failed to appear.

203 Fed. Rep. 894.

THIS is a suit, brought in 1911, to recover lands in the City of Seattle, County of King, State of Washington and to quiet title. (See R. & B. Code, Washington, § 785.) The plaintiff claimed title as heir, and grantee of other heirs, of Lars Torgerson Grotnes who died intestate in the County of King, Territory of Washington, in March, 1865. The defendant, the County of King, succeeded the County of King of the Territory which had control of the property pursuant to a decree of escheat which was passed by the Probate Court in May, 1869. The legislature of the Territory had provided that in case of the death of an intestate leaving no kindred his estate should escheat to the county in which it was situated. Washington Laws,

1862–3, p. 262. Demurrer was filed to the amended complaint on the grounds (among others) that the complaint did not state facts sufficient to constitute a cause of action and that the action had not been commenced within the time limited by law. The demurrer was sustained and judgment dismissing the complaint was affirmed by the Circuit Court of Appeals. 203 Fed. Rep. 894.

After alleging title in fee in Lars Torgerson Grotnes, and the fact that he had acquired the land under the name of John Thompson (having changed his name to conceal his identity) through certain mesne conveyances from a grantee of the United States, the amended complaint set forth in detail the proceedings in the Probate Court, which may be summarized as follows: That on March 26, 1865, the Probate Court, upon an informal request of H. L. Yesler and J. Williamson, assumed to appoint Daniel Bagley administrator of the estate of John Thompson, deceased, the order reciting that the decedent had died in the county, intestate, leaving property subject to administration; that after certain intermediate proceedings the administrator presented his petition on February 12, 1869, stating that no heirs at law had been found after diligent search, and praying that the administrator might be discharged and that after due notice the estate might be turned over to the county or such further order made as might be meet; and that on May 26, 1869, after publication of notice for four weeks in a local newspaper, a final decree of distribution was entered which recited the proceedings and continued as follows:

"That said decedent died intestate in the County of King, Washington Territory, on the — day of March, A. D. 1865, leaving no heirs surviving him;

　　*　　*　　*　　*　　*　　*　　*　　*

"There being no heirs of said decedent, that the entire estate escheat to the County of King, in Washington Territory.

"Now on this 26th day of May, A. D. 1869, on motion of said Daniel Bagley, administrator of said estate, and no exceptions or objections being filed or made by any person interested in the said estate or otherwise;

"It is hereby ordered, adjudged and decreed: that all the acts and proceedings of said administrator, as reported by this Court and as appearing upon the records thereof, be and the same are hereby approved and confirmed; and that after deducting said estimated expenses of closing the administration, the residue of said estate of John Thompson, deceased, not heretofore distributed, hereinafter particularly described, and now remaining in the hands of said administrator, and any other property not now known or discovered which may belong to the said estate, or in which the said estate may have any interest, be and the same is hereby distributed as follows, to-wit: The entire estate to the County of King, in Washington Territory.

\*　\*　\*　\*　\*　\*　\*　\*

"The following is a particular description of the said residue of said estate referred to in this decree, and of which distribution is ordered, adjudged and decreed, to-wit:

"1st. Cash, to-wit: $343.83 gold coin.

"2nd. And real estate, to-wit: One hundred and sixty acres of land on Duwamish River, in King County, W. T., more particularly described in a certain deed from Joseph Williamson and William Greenfield to John Thompson, dated January 19th, A. D. 1865, and recorded in Volume 1 of the records of King County, W. T., on pages 458, 459 and 460.

"Third. A lease of said land to John Martin, dated March 5th, 1866, on which the entire rent reserved remains due and unpaid.

"Dated May 26th, 1869."

It was alleged that this decree was null and void, that the Probate Court was wholly without jurisdiction to pass

upon the title to the land described or to declare it escheated; that all claims to the land by defendant, and all its acts relating thereto, had been under this assailed decree, and that the defendant had no instrument or judgment purporting to evidence any title in it; that neither the defendant nor any other authority had instituted any suit or proceeding before any tribunal for the purpose of having an escheat declared or its claim of title confirmed. The acts of the county in relation to the land were set forth, the tracts involved being described as the 'King County Farm,' 'King County Hospital Grounds,' 'King County Addition to the City of Seattle,' and 'King County 2nd Addition to the City of Seattle.' The plaintiff did not seek to recover the lands which had been appropriated for railroad rights of way or highways, or that portion which had been sold to innocent purchasers, and it was also conceded that the county might retain the buildings and tangible betterments which it had placed upon the land, as stated.

At the outset, after alleging that the plaintiff was a subject of the King of Norway and that the matter in dispute exceeded in value the sum of $300,000, the amended complaint set forth that the controversy involved the construction of Amendments V and XIV of the Constitution of the United States, and of §§ 1851, 1907 and 1924 of the Revised Statutes of the United States relating to the Territory of Washington.

It was further stated that the heirs of the decedent had no knowledge of his whereabouts or death until three years prior to the beginning of the action, and that the heirs, and particularly the plaintiff, had been diligent since receiving this information in searching for the proofs of the decedent's identity and of their relationship.

*Mr. Edward Judd,* with whom *Mr. Livingston B.*

*Stedman* and *Mr. S. S. Langland* were on the brief, for plaintiff in error:

No estoppel or laches were shown.

The county never acquired title by escheat.

The Territory was not a sovereign.

The organic law conveyed no property rights of United States to the Territory.

The territorial escheat act trenched upon the primary disposal of the soil by the United States and the act did not fit its title.

There was never any office found.

The territorial probate court proceedings were void; the organic law did not give jurisdiction to the Probate Court.

The organic law forbade interference with the primary disposal of the soil.

The territorial probate act did not cover escheats.

The probate proceedings were informal and insufficient.

The probate proceedings were not due process of law.

The statute of limitations does not apply.

The county took the property for public use without making compensation.

The county's possession was *ultra vires.*

The county's possession recognized the title of the heirs.

The county had no claim of right nor color of title.

*Mr. Robert H. Evans,* with whom *Mr. Alfred H. Lundin* and *Mr. John F. Murphy* were on the brief, for defendant in error.

MR. JUSTICE HUGHES, after making the foregoing statement, delivered the opinion of the court.

The motion to dismiss must be denied. It sufficiently appears from the amended bill that jurisdiction did not depend solely upon the citizenship of the respective

parties but that the controversy involved, with other questions, the construction of the act of Congress prescribing the authority of the territorial legislature. In this view, the decision of the Circuit Court of Appeals is not final. *Vicksburg* v. *Henson,* 231 U. S. 259, 267.

The plaintiff in error contends that the land in question did not escheat to the County of King, Territory of Washington, for the reasons (1) that the Territory was not a sovereign, but a municipal corporation, (2) that the organic law of the Territory conveyed to it no property rights of the United States, (3) that the act of the territorial legislature providing for escheat to counties was forbidden by the organic law, (4) that this legislative act was invalid because its title was not broad enough to cover the subject-matter, and (5) that there was never any office found.

There is, of course, no dispute as to the sovereignty of the United States over the Territory of Washington or as to the consequent control of Congress. As an organized political division, the Territory possessed only the powers which Congress had conferred and hence the territorial legislature could not provide for escheat unless such provision was within the granted authority. *Sere* v. *Pitot,* 6 Cranch, 332, 337; *American Ins. Co.* v. *Canter,* 1 Pet. 511, 543; *National Bank* v. *Yankton County,* 101 U. S. 129, 133. The Organic Act (March 2, 1853; 10 Stat. 172, 175; see Rev. Stat., §§ 1851, 1924) provided as follows:

"Sec. 6. . . . That the Legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States. But no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents. All the

laws passed by the Legislative Assembly shall be submitted to the Congress of the United States, and, if disapproved, shall be null and of no effect: *Provided,* That nothing in this act shall be construed to give power to incorporate a bank or any institution with banking powers, or to borrow money in the name of the Territory, or to pledge the faith of the people of the same for any loan whatever, directly or indirectly. No charter granting any privileges of making, issuing, or putting into circulation any notes or bills in the likeness of bank-notes, or any bonds, scrip, drafts, bills of exchange, or obligations, or granting any other banking powers or privileges, shall be passed by the Legislative Assembly; nor shall the establishment of any branch or agency of any such corporation, derived from other authority, be allowed in said Territory; nor shall said Legislative Assembly authorize the issue of any obligation, scrip, or evidence of debt, by said Territory, in any mode or manner whatever, except certificates for service to said Territory. And all such laws, or any law or laws inconsistent with the provisions of this act, shall be utterly null and void. And all taxes shall be equal and uniform; and no distinctions shall be made in the assessments between different kinds of property, but the assessments shall be according to the value thereof. To avoid improper influences, which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title."

This manifestly was not a grant of the property of the United States, but it was an authority which extended to "all rightful subjects" of legislation save as it was limited by the essential requirement of conformity to the Constitution and laws of the United States and by the restrictions imposed. The prohibition against interference "with the primary disposal of the soil" defined a limitation which had been established from the beginning in organizing

territorial governments. This provision was found in the Ordinance passed by the Congress of the Confedera- tion, April 23, 1784, for the government of the Western Territory (Amer. Cong., Pub. Journals, Vol. 4, 1782–1788, p. 379) and it was reënacted in the superseding Ordinance of 1787 (Art. IV, 1 Stat. 52, note). It was incorporated either by appropriate reference [1] or by express statement [2] in the organic acts of the Territories, and it was continued in substantially the same words in many of the enabling acts under which States were admitted to the Union.[3] For example, when Wisconsin was admitted, it was stipulated as a condition (9 Stat. 58) that the State should "never interfere with the primary disposal of the soil within the same by the United States," a condition which had its exact equivalent in the provision of other enabling acts that the States should "never interfere with the primary disposal of the public lands" lying within them. (Arkansas, 5 Stat. 51; Iowa, Florida, *Id.* 743; California, 9 Stat. 452.) The restriction had reference to the disposition of the public lands of the United States, and, neither as to State nor as to Territory did these words purport to limit the legislative power, otherwise duly exercised, where property had passed into private ownership and there was no interference with the exclusive authority of Congress in dealing with the public domain. *Carroll* v. *Safford,* 3 How. 441, 461; *Witherspoon* v. *Duncan,* 4 Wall. 210, 218; *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 164,

---

[1] Territory south of the Ohio, 1 Stat. 123; Mississippi, *Id.* 549; Indiana, 2 Stat. 58; Michigan, *Id.* 309; Illinois, *Id.* 514; Alabama, 3 Stat. 371.

[2] E. g., Territory of Orleans, 2 Stat. 284; Missouri, *Id.* 747; Florida, 3 Stat. 655; Wisconsin, 5 Stat. 13; Iowa, *Id.* 237; Oregon, 9 Stat. 325; Minnesota, *Id.* 405; New Mexico, *Id.* 449; Utah, *Id.* 454.

[3] E. g., Missouri, 3 Stat. 547; Arkansas, 5 Stat. 51; Iowa, Florida, *Id.* 743; California, 9 Stat. 452; Wisconsin, 9 Stat. 58; Kansas, 12 Stat. 127.

165; *Crane* v. *Reeder*, 21 Michigan, 24, 74; *Oury* v. *Goodwin*, 3 Arizona, 255, 260; *Topeka Co.* v. *McPherson*, 7 Oklahoma, 332, 338–340. So far as 'the primary disposal of the soil' was concerned, provision for escheat on the death of an owner in fee without heirs could not be deemed to be an interference, whether the provision was enacted by a Territory or by a State.

The scope of the authority conferred upon territorial governments has frequently been described. Subject to the general scheme of local government defined by the organic act, and the special provisions it contains, and subject also to the right of Congress 'to revise, alter and revoke at its discretion,' the local legislature has generally been entrusted 'with the enactment of the entire system of municipal law.' *Hornbuckle* v. *Toombs*, 18 Wall. 648, 655. 'Rightful subjects' of legislation, except as otherwise provided, included all those subjects upon which legislatures had been accustomed to act. *Maynard* v. *Hill*, 125 U. S. 190, 204; *Clinton* v. *Englebrecht*, 13 Wall. 434, 442; *Cope* v. *Cope*, 137 U. S. 682, 684; *Walker* v. *Southern Pacific R. R.*, 165 U. S. 593, 604. Unquestionably, authority was granted to the Territory to legislate with respect to the devolution of real property on the death of the owner. Thus in *Cope* v. *Cope, supra*, where the validity of an act of the territorial legislature of Utah permitting inheritance by illegitimate children was sustained, it was said by the court, after referring to the restrictions of the Organic Act: "With the exceptions noted in this section, the power of the territorial legislature was apparently as plenary as that of the Legislature of a State. *Maynard* v. *Hill*, 125 U. S. 204. The distribution of and the right of succession to the estates of deceased persons are matters exclusively of state cognizance, and are such as were within the competence of the territorial legislature to deal with as it saw fit, in the absence of an inhibition by Congress." Escheat on failure

of heirs was a familiar subject of legislation in the American Commonwealths. The rule of the common law in this respect, as in others, was subject to modification, and adaptation to local conditions was essentially a matter of legislative policy. In the case of the Territories, Congress could have dealt with this subject if it chose, but it did not see fit to establish a rule of its own. The matter, however, remained a 'rightful subject' of legislation and Congress did not except it from the broad grant of legislative power. Assuming that it had authority, the Legislative Assembly of the Territory of Washington at its first session provided in its article on "Descent of Real Estate" that "if the intestate shall leave no kindred, his estate shall escheat to the Territory." Statutes of Washington Territory, 1854, p. 306. Similar provision was made in the case of personalty. *Id.*, p. 308. In 1860, it was enacted that if the intestate should leave no kindred his real estate should escheat *to* the county in which it was situated and his personal *estate* to the county in which the administration was had. Washington Laws, 1859–60, pp. 222, 224. These provisions were reënacted in the "Probate Practice Act" of 1863. Washington Laws, 1862–3, pp. 262, 265. By the Code of 1881, the estate on failure of heirs was to escheat to the Territory "for the support of the common schools" in the county in which the decedent resided or where the estate was situated. Section 3302, Eighth. It is significant that these acts, thus asserting the legislative power from the time of the organization of the Territory until it became a State, were never disapproved by Congress.

It is urged that to sustain the legislative authority to enact legislation of this character would be contrary to the principles declared in the case of the *Mormon Church* v. *United States*, 136 U. S. 1. But this contention is without basis. In that case, the suit was brought pursuant to an act of Congress and it was pointed out that Congress had expressly declared in the earlier act of 1862 that all real

estate acquired by the corporation contrary to its provisions should "be forfeited and escheat to the United States." *Id.*, p. 47. Our attention is also directed to statements in the opinions in *Williams* v. *Wilson*, 1 Martin & Yerger, 248, 252, and *Etheridge* v. *Doe*, 18 Alabama, 565, 574, but neither of these cases involved the question of the validity of territorial legislation for escheat. In *Lee* v. *Territory*, 2 Montana, 124, the act of the Territory by which it was attempted to forfeit placer mines held by aliens was declared to be invalid, but the controlling consideration was that its provisions were repugnant to the authority and action of Congress with respect to the disposition of the public lands. See also *King* v. *Ware*, 4 Northwestern, 858, 860. On the other hand, in *Crane* v. *Reeder*, 21 Michigan, 24, 76, the legislation of the Territory of Michigan providing for escheat on failure of lawful heirs was found not to be in conflict with the Ordinance of 1787 or with any act of Congress. And, so far as the question has been considered with regard to the Territory of Washington, the authority of the legislature has been upheld. *Pacific Bank* v. *Hannah*, 90 Fed. Rep. 72, 79; see *Territory* v. *Klee*, 1 Washington, 183, 188.

It is also objected that the title of the act here involved was not sufficient under the last provision of § 6 of the Organic Act above quoted. (Rev. Stat., § 1924.) The statute under which the proceeding was had was entitled "An Act defining the Jurisdiction and Practice in the Probate Courts of Washington Territory." Washington Laws, 1862–3, p. 198. It covered the whole subject of probate practice, of wills, of descent, and of distribution. We are of the opinion that the matter of escheat for failure of heirs did have "proper relation" to the other matters embraced in the statute, and that the object was adequately expressed in the title within the meaning of the organic law. The objection that there was no 'office found' is not substantial, save as it may be deemed to

raise the question whether there was compliance with the territorial legislation which we shall presently consider. If the legislature had authority to establish its rule as to escheat, it was also competent for it suitably to provide. as to the tribunal which should have jurisdiction and the procedure for determining whether the rule was applicable in a particular case. *Hamilton* v. *Brown*, 161 U. S. 256, 263.

Concluding that escheat in the case of death of an owner without heirs was a rightful subject of legislation within the meaning of the Organic Act—not inconsistent with the Constitution and laws of the United States and not embraced within the stated exceptions—and that the provision in the Probate Practice Act was a valid exercise of the authority thus granted, we are brought to the question as to the jurisdiction of the Probate Court to enter the decree set forth in the amended complaint, and as to the effect of that decree.

Section 9 of the Organic Act (10 Stat. 175; see Rev. Stat., § 1907) provided that the 'judicial power' of the Territory should be vested 'in a supreme court, district courts, probate courts, and in justices of the peace,' and that the jurisdiction of these courts, including the probate courts, should be 'as limited by law.' The territorial legislature, having the power to define the jurisdiction of the probate courts, provided in the act which was in force at the time of the proceedings in question that these courts should have original jurisdiction within their respective counties over probate proceedings, the granting of letters testamentary and of administration, and the settlement of accounts of executors and administrators (Probate Practice Act of January 16, 1863, § 3; Washington Laws, 1862–3, p. 199). On qualification, an administrator was entitled to the immediate possession of the real estate as well as of the personal estate of the deceased, and to receive the rents and profits until the estate was settled

or delivered over by order of the Probate Court to the heirs or devisees (*Id.*, § 165, p. 228). At any time subsequent to the second term of the Probate Court after the issue of letters, any heir might present his petition to the court asking for his share of the estate (*Id.*, § 309, p. 256); and the act contained the following express provisions for distribution, which related to both real and personal property:

"Sec. 317. Upon the settlement of the accounts of the executor or administrator, or at any subsequent time, upon the application of the executor or administrator, or any heir, devisee or legatee, the court shall proceed to distribute the residue of the estate, if any, among the persons who are by law entitled.

"Sec. 318. In the decree the court shall name the person and the portion, or parts to which each shall be entitled; and such persons shall have the right to demand and recover their respective shares from the executor or administrator, or any person having the same in possession."

Those 'by law entitled' to the real estate were described in § 340 [1] (*Id.*, pp. 261, 262) which gave the order of taking

---

[1] This section provided:

"SEC. 340. When any person shall die seized of any lands, tenements, or hereditaments, or any right thereto, or entitled to any interest therein, in fee simple, or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts, as follows:

"1st. In equal shares to his children, and to the issue of any deceased child, by right of representation, and if there be no child of the intestate living at the time of his death, his estate shall descend to all his other lineal descendants; and if all the same descendants are in the same degree of kindred to the intestate, they shall have the estate equally, otherwise they shall take according to representation.

"2d. If he shall leave no issue, his estate shall descend to his father."

(Then follow paragraphs 3d, 4th, 5th, 6th and 7th with respect to kindred of different degrees.)

"8th. If the intestate shall leave no kindred, his estate shall escheat to the county in which such estate may be situate."

according to relationship and in the last paragraph provided for escheat to the county if there were no kindred. It does not seem to be disputed, that under this act, if proceedings in a probate court were properly initiated, that court would have jurisdiction to enter a decree determining the interests of heirs and distributing the real estate to those of the kindred, if any, who were found to be entitled to take as provided in this section. This jurisdiction formerly exercised by the probate courts of the Territory has been continued in the superior courts of the State, sitting in probate. R. & B. Code, Washington, § 1587 *et seq.* See *Stewart* v. *Lohr*, 1 Washington, 341, 342; *Balch* v. *Smith*, 4 Washington, 497, 500, 502; *Hazelton* v. *Bogardus*, 8 Washington, 102, 103; *In re Sullivan's Estate*, 48 Washington, 631; *In re Ostlund's Estate*, 57 Washington, 359, 364, 366. Speaking of the essential nature of this proceeding for distribution and describing the decree if rendered upon due process of law as final and conclusive, the court said in the case of *Ostlund's Estate, supra:* "Its very object and purpose is to judicially determine who takes the property left by the deceased." See also *Alaska Banking Co.* v. *Noyes*, 64 Washington, 672, 676; *McDowell* v. *Beckham*, 72 Washington, 224, 227; *Krohn* v. *Hirsch*, 81 Washington, 222, 226. But it is contended that the County, asserting escheat, did not claim as successor to the decedent; that the jurisdiction of the Probate Court ceased as soon as it ascertained that there were no heirs, and that it had no power to declare the escheat and decree distribution to the County. We cannot accede to this view: It is not the case, in a proper sense, of an attempt to determine the title of third persons, that is, of adverse claimants. *Stewart* v. *Lohr, supra.* The provision for escheat to the county in case the intestate left no kindred was a part of the scheme of distribution defined by the act and we cannot doubt that not only had the court the power to determine the interests of the

heirs in the real estate to be distributed, but it likewise had the power to determine whether, there were heirs and if it was found that there were none to decree distribution according to the statute.

It is insisted that § 480 of the Civil Practice Act of 1854 (p. 218) prescribed the procedure in relation to escheats; that is, it provided for the filing of an information by the prosecuting attorney in the District Court and for proceedings like those in civil action for the recovery of property. This section applied whenever property should "escheat or be forfeited to the territory," but in 1860, the Civil Practice Act of 1854 was repealed (§ 500, Washington Laws, 1859–60, p. 103), and in the provision which corresponded to § 480 of the former act the word 'escheat' was struck out (§ 472, p. 98). In the Civil Practice Act of 1863, this provision, without the reference to escheat, was continued (§ 519, Washington Laws, 1862–3, p. 192) and it is found in the same form in the Code of 1881 (§ 713). It appears that from 1863 to the year 1907 (see R. & B. Code, § 1356) there was no provision in the laws of either the Territory or the State in relation to escheat, save those found in the Probate Practice Acts; and the act of 1907 did not disturb the jurisdiction of the court which had the administration of the estate. Referring to this, it is stated by the district judge that "the probate courts of the Territory and the superior courts of the State have uniformly assumed jurisdiction in this class of cases, and the right of the State or county to appear in the probate proceeding and contest the rights of other claimants has been recognized by the highest court of the State." 196 Fed. Rep., p. 799, citing *In re Sullivan's Estate,* 48 Washington, 631. See also *Helm* v. *Johnson,* 40 Washington, 420, 421.

Deeming it to be clear that the Probate Court had jurisdiction to declare an escheat and to distribute the real property to the county when it was found that the intestate had left no kindred (Probate Practice Act, 1863,

§§ 317, 318, 340, 8th, p. 262), we pass to the remaining question with respect to the proceedings that were actually taken in that court in connection with the property in controversy. It is objected that the petition for the appointment of an administrator was informal; that it did not set forth the jurisdictional facts; that it was signed by persons not shown to have any interest in the estate, and asked for the appointment of another 'stranger'; and that hence the court never acquired jurisdiction and that its appointment of the administrator and its subsequent proceedings were null and void. But it is not disputed that the real property was within the county. The owner, a resident of that county, had died. The order of appointment recited that he had died intestate. As a court of record (*Id.*, § 5, p. 200) having capacity to administer, its jurisdiction over the subject—as has been said by the Supreme Court of the State of Washington with reference to the Probate Court of the Territory [1]—"carries with it the presumption of the integrity of the judgment, the same as does the judgment of a court of general jurisdiction." *Magee* v. *Big Ben Land Co.*, 51 Washington, 406, 409, 410. Despite the informality of the petition, the appointment of the administrator was not void, and not being void it is not subject to collateral attack. *Magee* v. *Big Ben Land Co., supra; Grignon's Lessee* v. *Astor,* 2 How. 319, 339; *Florentine* v. *Barton,* 2 Wall. 210, 216; *Comstock* v. *Crawford,* 3 Wall. 396, 403; *McNitt* v. *Turner,* 16 Wall. 352, 366; *Veach* v. *Rice,* 131 U. S. 293, 314; *Simmons* v. *Saul,* 138 U. S. 439, 457; 4 Bac. Abr. 96; *Pick* v. *Strong,* 26 Minnesota, 303; *Morgan* v. *Locke,* 28 La. Ann. 806; *Riley's Admr.* v. *McCord's Admr.,* 24 Missouri, 265. It appears that subsequently the Probate Court, after opportunity had been afforded to discover

---

[1] The reference is to the Probate Court of the Territory as it existed under the Code of 1881, but its jurisdiction was not essentially different from that of the Probate Court under the earlier Probate Practice Act.

heirs, entertained a petition of the administrator for final account and distribution. The statutory notice (Probate Practice Act, 1863, § 319) was published and on the return day the proceeding was duly continued and, on hearing, the decree was entered settling the account, finding that there were no heirs, and directing distribution of the real property, as described, to the County of King. This proceeding was essentially *in rem.* *In re Ostlund's Estate, supra; Alaska Banking & Safe Deposit Co.* v. *Noyes, supra; McDowell* v. *Beckham, supra; Krohn* v. *Hirsch, supra.* It was competent for the court to inquire whether there were heirs, and if there were such to determine who were entitled to take according to the order prescribed by the statute, and also, if it was found that there were no heirs, to make the distribution to the County as the statute required. It is apparent that there was no deprivation of property without due process of law. The court, after appropriate notice, did determine that there were no heirs and its decree being the act of a court of competent jurisdiction under a valid statute bound all the world including the plaintiff in error. It cannot be regarded as open to attack in this action. *Grignon's Lessee* v. *Astor, supra; Florentine* v. *Barton, supra; Caujolle* v. *Ferrié,* 13 Wall. 465, 474; *Broderick's Will,* 21 Wall. 503; *Simmons* v. *Saul, supra; Goodrich* v. *Ferris,* 214 U. S. 71, 80, 81.

As, in this view, the judgment of the court below must be affirmed, we do not find it necessary to consider the questions that have been argued with respect to the application of the Statute of Limitations.

*Judgment affirmed.*