## TERRITORY OF ALASKA v. FIRST NAT. BANK OF FAIRBANKS, ALASKA.

Circuit Court of Appeals, Ninth Circuit. October 31, 1927.

No. 5159.

1. Territories ⊜~20—Statute of Alaska providing for escheats held valid (Laws Alaska 1921, c. 40; 48 USCA § 77).

The legislative powers conferred on Alaska by Act Aug. 24, 1912, § 9 (48 USCA § 77; Comp. St. § 3536), held broad enough to validate Laws Alaska 1921, c. 40, providing for escheats; such act not having been disapproved by Congress, and the matter of escheats being customarily the subject of local legislation.

2. Escheat ⊜~8(1)—Alaska statute requiring banks to report escheated deposits held not invalid, as interfering with business of national banks (Laws Alaska 1921, c. 40, § 9).

Laws Alaska 1921, c. 40, § 9, requiring banks, having in their possession property or funds escheated to the territory under the terms of the act, to report the same to the Attorney General, that he may take steps to have the escheat judicially determined, held not invalid as an unwarranted interference with the business of a national bank.

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska; Cecil H. Clegg, Judge.

Action by the Territory of Alaska against First National Bank of Fairbanks, Alaska, for writ of mandamus. From a judgment dismissing the alternative writ, plaintiff brings error. Reversed.

John Rustgard, Atty. Gen., for the Territory of Alaska.

John A. Clark, of Fairbanks, Alaska, and Lyons & Orton, of Seattle, Wash., for defendant in error.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Sustaining a demurrer, the lower court entered judgment dismissing an alternative writ of mandamus directed to the defendant, a national banking association in Alaska, requiring it to disclose to the Attorney General of the territory certain dead accounts in the course of an investigation he was making to determine whether they had escheated to the territory. Plaintiff brings error.

No point is made touching the propriety of the proceeding, or the formal sufficiency of the record (Comp. Laws of Alaska, 1913 §§ 1384–1397), and we are therefore concerned only with questions of substantive law. The proceeding is brought to enforce performance of a duty imposed by section 9 of chapter 40 of the Laws of Alaska for 1921, entitled "An act providing for the escheat of certain estates to the territory of Alaska, and providing for their disposal, and repealing former laws on that subject and declaring an emergency."

Section 1 declares that: "When any person shall die intestate, without heirs, leaving real or personal property in the territory, the same shall escheat to and become the property of the territory of Alaska."

Section 2 provides for appropriate actions in the name of the territory by the Attorney General to enforce the rights of the territory, and to acquire possession of such property. Section 3 prescribes the duties of administrators and probate courts, where, in the course of administration of estates, it is ascertained there are no heirs. Section 4 authorizes the Attorney General to bring certain proceedings in the district court in cases where he has reason to believe property not administered upon is subject to escheatment. Other provisions prescribe the duties of officers and the mode of disposing of property after adjudication of escheatment.

Section 9 is as follows: "It shall be the duty of every bank, banker or banking institution in the territory, who holds on deposit or otherwise any fund, funds or other property of any kind or nature which has escheated to the territory, to inform the Attorney General of that fact; and each bank, banker or banking institution in the territory, who has on deposit or otherwise any fund, funds or other property to which no owner is known to such bank, banker or banking institution, or the owner of which has not been heard from by such bank, banker or banking institution for more than seven (7) years, shall in writing notify the Attorney General of that fact; and if upon investigation the Attorney General shall con-

clude, or have reason to believe, that such funds or other property have been escheated to the territory, he shall institute the proper proceedings under the provisions of this act to have such funds or property adjudged the property of the territory and transmitted to the Treasurer."

It is alleged that defendant holds on deposit a large number of funds and properties, the owners of which the defendant bank does not know, and from whom it has not heard for more than seven years, and that, defendant having refused on demand to make any disclosures with respect thereto, the Attorney General is unable to inform himself whether such funds and properties have in fact escheated, or to institute appropriate actions for escheatment.

[1] It is first contended by the defendant that this act is void, as being in conflict with the Organic Act of the territory, particularly sections 182–189, inclusive. 31 Stat. pp. 516–519; sections 608–615, Comp. Laws of Alaska 1913. It will be noted that the act under consideration is almost identical with these sections, the only vital difference being that it provides for escheatment to the territory instead of to the United States. And the question, therefore, is whether the territorial legislature was competent to make such a change. Conceding that Congress has plenary power over territories, and that its expressed will constitutes the fundamental law (Mormon Church v. United States, 136 U. S. 1, 10 S. Ct. 792, 34 L. Ed. 481), plaintiff responds that the authority so to legislate was conferred upon the territorial legislature by the Act of August 24, 1912, entitled "An act to create a Legislative Assembly in the territory of Alaska, to confer legislative power thereon, and for other purposes." 37 Stat. 512.

By section 9 of this act (48 USCA § 77 [Comp. St. § 3536]) it is declared that "the legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States," and by section 3 of the act (48 USCA § 23 [Comp. St. § 3530]) it is provided "that all the laws * * * heretofore passed establishing the executive and judicial departments in Alaska shall continue in full force and effect until [altered], amended or repealed by act of Congress; that except as herein provided all laws now in force in Alaska shall continue in full force and effect until altered, amended, or repealed by Congress *or* by the Legislature." This general power of the Legislature is qualified by a proviso excluding sev-

eral specific subjects, but escheats is not one of them. The last section of the act (48 USCA § 90 [Comp. St. § 3544]), provides that all laws passed by the Legislature shall be submitted to Congress by the President, "and, if disapproved by Congress, they shall be null and of no effect." Congress has not disapproved the law in question.

It is clear, we think, that Congress did not intend to withhold power to legislate upon the subject. Fortifying the inference to be drawn from the fact that escheats is not named as one of the prohibited fields, and though passed in 1921, Congress has not disapproved the law, is the consideration that the devolution of property and its escheat are customarily the subject of local legislation; and, in view of the general practice in respect to territories, it is not to be presumed or lightly inferred that Congress intended to discriminate against Alaska. Christianson v. King County (C. C. A.) 203 F. 894, 902.

"The distribution of and the right of succession to the estates of deceased persons are matters exclusively of state cognizance, and are such as were within the competence of the territorial legislature to deal with as it saw fit, in the absence of an inhibition by Congress." Cope v. Cope, 137 U. S. 682, 11 S. Ct. 222, 34 L. Ed. 832.

"The scope of the authority conferred upon territorial governments has frequently been described. Subject to the general scheme of local government defined by the Organic Act, and the special provisions it contains, and subject also to the right of Congress 'to revise, alter, and revoke at its discretion,' the local Legislature has generally been intrusted 'with the enactment of the entire system of municipal law.' Hornbuckle v. Toombs, 18 Wall. 648, 655 [21 L. Ed. 966]." Christianson v. King County, 239 U. S. 356, 365, 36 S. Ct. 114, 118 (60 L. Ed. 327).

"Escheat on failure of heirs was a familiar subject of legislation in the American commonwealths. The rule of the common law in this respect, as in others, was subject to modification, and adaptation to local conditions was essentially a matter of legislative policy. In the case of the territories, Congress could have dealt with this subject if it chose, but it did not see fit to establish a rule of its own. The matter, however, remained a 'rightful subject' of legislation, and Congress did not except it from the broad grant of legislative power." Id.

See, also, Maynard v. Hill, 125 U. S. 190, 8 S. Ct. 723, 31 L. Ed. 654; Clinton v. Englebrecht, 13 Wall. (80 U. S.) 434, 20 L. Ed.

659; United States v. Fish, 5 Alaska, 31; Alaska P. F. v. Territory of Alaska (C. C. A.) 236 F. 52.

[2] Defendant next insists that the law in question constitutes an unwarranted interference with the business of national banking associations, citing chiefly First Nat. Bank of San Jose v. State of California, 262 U. S. 366, 43 S. Ct. 602, 67 L. Ed. 1030. But, manifestly, the state law there held to be invalid, as "qualifying in an unusual way agreements between national banks and their customers," is essentially different from the Alaska Act. The California statute (Code Civ. Proc. § 1273) purports to "escheat" or forfeit to the state any deposit, though the depositor may be alive, or may have died leaving heirs, where for the period of 20 years the account has been wholly inactive, respecting both deposits and withdrawals, and neither the depositor nor any claimant "has filed any notice with such bank showing his or her present residence."

The Alaska statute does not qualify any contract, but deals only with property the title to which has failed under a rule substantially as of the common law. "When any person," such is the language, "shall die intestate, without heirs, leaving real or personal property in the territory, the same shall escheat," etc. All of the other provisions, including section 9, have to do only with the mode of determining whether title has so failed, and, after judicial determination upon due process, with the disposition of the property. Section 1, above quoted, defines the scope of the act, and the Attorney General cannot disturb any account, or the bank's full control over it, unless and until, with the information he seeks from the bank, or otherwise, he shall have secured a valid judicial determination that the depositor died intestate, without heirs, in which case the deposit, like other property, is subject to escheatment. In essence the result is the same as where, in the case of an administered estate, the probate court requires the deposit to be delivered to the administrator, and ultimately, upon a finding of no heirs, turns it over to the territory.

The defendant is not in a position at this juncture to question the sufficiency of the procedure prescribed for an action in escheat. If a demand for possession of a deposit shall in the future be made upon it by the territory, based upon a judgment void for want of due process, such invalidity will constitute a complete defense. But, as was said in Security Bank v. California, 263 U. S. 282, 286, 44 S. Ct. 108, 110 (68 L. Ed. 301,

31 A. L. R. 391): "The contract of deposit does not give the banks a tontine right to retain the money in the event that it is not called for by the depositor. It gives the bank merely the right to use the depositor's money until called for by him or some other person duly authorized. If the deposit is turned over to the state in obedience to a valid law, the obligation of the bank to the depositor is discharged." Likewise turning it over to the territory in obedience to a valid judgment would fully protect the defendant.

We are not impressed with the suggestion that the mere requirement that banking associations furnish information touching the status of certain of their accounts, as provided in section 9, is an undue or unreasonable interference with the conduct of their business. Such was apparently not the thought of Congress, for in section 189 of the Organic Act we find substantially the same requirement. 31 Stat. 519. While national banks are instrumentalities of the government, and its authority over them is therefore supreme, they "are subject to the laws of a state in respect of their affairs, unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States." First Nat. Bank v. Missouri, 263 U. S. 640, 44 S. Ct. 213, 68 L. Ed. 486.

The burden here imposed is not thought to be essentially different in kind or gravity from that involved in making answer to garnishment process, and in either case the proceeding in which the disclosure is made may result in a transfer of the deposit to some one other than the original depositor. But it would hardly be contended that a national bank is exempt from such process. First Nat. Bank v. Kentucky, 9 Wall. (76 U. S.) 362, 19 L. Ed. 701; First Nat. Bank v. Colby, 46 Ala. 435. Similarly a national bank may be required to make disclosure of its deposits for taxation purposes, or of its accounts to stockholders. First Nat. Bank of Youngstown v. Hughes (C. C.) 6 F. 737; Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. Ed 130, 4 Ann. Cas. 433; First Nat. Bank v. Kentucky, 9 Wall. (76 U. S.) 362, 19 L. Ed. 701; Waite v. Dowley, 94 U. S. 527, 24 L. Ed. 181; State v. Clement Nat. Bank, 84 Vt. 167, 78 A. 944, Ann. Cas. 1912D, 22.

We find no merit in defendant's third contention, namely, that the territorial act is void for want of compliance with section 8 of the Act of August 24, 1912 (37 Stat. 514 [48 USCA § 76; Comp. St. § 3535]), providing that: "No law shall embrace more than one subject, which shall be expressed in its title." It reasonably complies with these requirements.

Reversed, for further proceedings in harmony herewith.