**MONTGOMERY v. GILBERT et al.**
**No. 7158.**

Circuit Court of Appeals, Ninth Circuit.
April 22, 1935.

Simon P. Wilson, of Deer Lodge, Mont., and H. Lowndes Maury, of Butte, Mont., for appellant.

J. A. Poore, of Butte, Mont., Thomas E. Gilbert, of Dillon, Mont., and M. S. Gunn and Carl Rasch, both of Helena, Mont., for appellees Gilbert and Bank of Dillon.

R. F. Gaines, of Butte, Mont., for appellee Federal Land Bank of Spokane.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an appeal from a decree of dismissal of plaintiff's bill in equity entered in the court below following trial upon the merits.

Plaintiff-appellant filed his bill attacking, upon grounds of fraud, certain "orders, judgments and decrees" of the district court of Beaverhead county, Mont., in connection with the administration of the estate of William Montgomery, deceased. The bill was filed by appellant as a citizen of the state of Idaho, shortly after he had reached his majority, in the year 1931.

Appellant is the youngest child of the decedent, and is one of the devisees under his father's will. Other devisees or legatees are the widow, two sons and four daughters of the decedent. Of these, the two sons and two of the daughters are not named as defendants in the complaint, nor is the omission accounted for therein. In his brief appellant states that the two daughters, Frances and Anna, died before the legacies matured. No explanation appears why the two other sons were not made parties defendant. William George, one of the sons, testified at the trial.

In our view of the case, it is not necessary to consider the merits of the controversy either as set forth in the pleadings or as disclosed by the evidence. Accordingly, we will state only the facts pertinent to the question of jurisdiction, on which rests our determination of the cause.

The appellant is a citizen of Idaho, and all of the appellees save the Federal Land Bank of Spokane are citizens of Montana, or, if corporations, are organized under the laws of the latter state. The land bank is a corporation organized under an act of Congress, and has its principal place of business at Spokane, Wash. Jurisdiction of this case was alleged by reason of the diversity of citizenship of the parties.

William Montgomery died testate at Beaverhead county, Mont., on October 24, 1919. On November 25, 1919, there was

filed a waiver of statutory notice, by which consent was given that hearing on the petition for the probate of the will might be had on that day. The waiver purports to bear the signatures of the widow and six of the children of the testator. As to James, Anna, Elizabeth, and the appellant, after each of whose purported signatures appears the word "Minor," appellant alleges that the signatures are forgeries, perpetrated by the widow at the "instance and request" of J. H. Gilbert, one of the appellees, who at that time was cashier of the Bank of Dillon, another appellee, and named in the will as one of the executors.

On November 25, 1919, the Montana court entered an order admitting the will to probate, and issued letters testamentary to Gilbert, who thereupon subscribed the oath and assumed the duties of executor. The order admitting the will to probate recited that "due proof" had been "made that notice has been duly given of the time appointed for proving said Will and for hearing said petition, according to law, to all parties interested."

At the time the will was probated, appellant was less than ten years old. In his complaint appellant alleges that "no copy of any notice of the time appointed for the probate was ever addressed" to the minor heirs, James, Anna, and himself, or to J. B. Poindexter, named as coexecutor in the will, and at that time residing at Honolulu, Hawaii. The appellant testified that no guardian was ever appointed for him during his minority, and that he "did not have any recollection" of there ever having been any notice served upon him of the application to probate his father's will.

On this subject of waiver and alleged lack of notice, the court below made the following observations:

" * * * The order of probate of the will and letters to Gilbert recites that 'due proof' was 'made that notice has been duly given,' and there is no substantial evidence to the contrary. Inheritance the creation of statute is subject to statutory regulations, and probate is so far in rem that wills may be probated and estates administered without notice to or representation for minors (and adults too for that matter), save to the extent required by statute, which in this state does stipulate for notice 'addressed' to the heir and 'deposited in the postoffice,' or 'personal service is equivalent.' Plaintiff's testimony that he has 'no recollection' of receiving any such notice, may be taken as true and yet notice duly given. Notice mailed is legal and constructive notice even though not received.

"A waiver of notice in plaintiff's behalf by some one signed and found in the files, must be presumed to have been as it should have been ignored by the Court if brought to its attention, for that a minor cannot waive notice or process.

"Strange enough, the plaintiff presented the Clerk of the probate court as a witness who produced some of the probate records. He was not even asked whether or not the statutory notice had been given by him; so if necessary the presumption prevails he performed his official duty and did give it.

"It follows that the probate court had jurisdiction of plaintiff, and accordingly follows the usual consequence. That is, though plaintiff a minor and unrepresented other than by the Court at least obligated to protect his interests whether or not it did he none the less had his 'day in court,' and is bound and concluded by the proceedings even as adults in like circumstances, save certain statutory rights are his to be timely exercised in the probate or some other court."

In this connection it should be observed that the order of the state probate court authorizing the executor Gilbert to sell all of the real property belonging to the estate recited, "due proof of the due publication of a copy of said order to show cause having been made as required by law and the order of this Court," and that it appeared to the court it was "for the best interests of the estate and all interested therein, including the minor heirs, that said real estate be sold and that the proceeds thereof be applied upon the payment of the debts of said deceased." Appellant alleges in his complaint that there was never "any necessity why any executor should have sold any of plaintiff's said land for the payment of any debts."

Paragraph 10 of the will reads as follows: "I direct that my estate shall be settled as rapidly as possible, with due regard to the interest of my heirs, and upon distribution, the said J. B. Poindexter and J. H. Gilbert shall become trustees of the property remaining. I direct that they shall hold and operate the same as such trustees for the benefit of my said heirs respectively in the same manner as I have heretofore managed said property and until my youngest son shall arrive at the age of twenty-one (21) years, and I give them full power to

sell my part of the property as they shall deem best, and to borrow money for the operation of the business and execute such necessary instruments to secure such loans as may be required or deemed essential."

Attached as an exhibit to the complaint is the state probate court's "decree of settlement of account and order discharging executor," directing the executor to apply the balance of cash remaining in his hands to payment of the debts due to two banks. That decree, dated February 23, 1926, recites that the estate is insolvent, and that all its property has been sold.

The appellant's complaint prayed that appellees be required to set forth the nature of their claims to the property therein described, and that all such adverse claims be determined by decree of the court; that the court make a complete adjudication of the title to the lands therein described, the title to which was sought to be quieted, and that appellant's title thereto be quieted; that the court direct the cancellation of all instruments constituting clouds upon appellant's title to the real property in question, or any part thereof, and direct the execution of conveyances where necessary, or the doing of any "other act of a personal nature" to give appellant the relief sought by him; that, if any conveyance, etc., shall not be made within the time specified in the decree, then the decree shall have the same effect as if such conveyance, etc., had been duly executed; that it be decreed that the appellees and all other persons have no right to the real property and that appellant's title thereto is valid; that the appellees and all other persons be forever debarred from asserting any claim to such property, adversely to appellant; that it be decreed, so far as appellant is concerned, "that the order, judgments, and decrees of the district court of Beaverhead County, Montana, made and entered in the administration of the estate of William Montgomery, deceased, and complained of in this complaint are illegal and that the same be held for naught in so far as they assume and purport to divest plaintiff of the ownership of the real estate described in the complaint"; that the appellee J. H. Gilbert be required "to make a full and complete account to the court and to the plaintiff of all personal property and money received by him or taken into his possession as executor of the will of William Montgomery, deceased, and the value thereof, and all sums of money received by him on sales of any such personal property, and that de-

fendant The First National Bank of Dillon be required to make a full and complete account to the court and to the plaintiff of all sums of money received by it from the said J. H. Gilbert, and belonging to said estate"; and that the appellant recover "one-fifth of said personal property or one-fifth of the value thereof."

The appellees filed motions to dismiss on the following grounds: (1) That it appeared from the face of the complaint that the court below had no jurisdiction of the subject-matter of the suit; (2) that the complaint did not state facts sufficient to constitute a valid cause in equity; (3) that there was a fatal defect of parties defendant, in that all of the heirs, devisees, and legatees were necessary and indispensable parties, "and more particularly, Cecilia L. Montgomery, the widow of said deceased and the mother of said plaintiff."

The court denied the motions. Leave was granted to amend the complaint by interlineation, adding Mrs. Montgomery as a party, and she later filed a disclaimer of any interest "in any property, claim, or matter involved in this suit."

After a trial on the merits, the court below made findings that "statutory and due notice of the probate of the will and issuance of letters testamentary was given to plaintiff as in the probate court's order recited," and that "the conversion in the complaint charged is not proven." Accordingly, a decree of dismissal was ordered.

There are a number of serious infractions of the rules of this court, attributable to the appellant. Twenty-five assignments of error appear in the record. Several of them are more than a typewritten page in length, and contain tabular and argumentative matter which has no place in an assignment of error. The Supreme Court and this court have repeatedly expressed disapproval of a multiplicity of assignments. After stating that he relies upon each assignment, appellant sets out in his brief twenty-six specifications of error. The additional specification, not found among the assignments, appears to be No. 20, which reads as follows: "The Court erred in holding that the State Court ever had jurisdiction to probate the will as against plaintiff or that he was ever brought by service, constructive or personal within the jurisdiction of that court."

The record, presented in forma pauperis, containing 848 typewritten pages, is not alphabetically indexed. The appellant's open-

ing brief, 131 pages in length, and his reply brief, contain no subject indexes, as required by the rules of this court. All these various violations of the rules have unnecessarily added to the burdens of this court in considering this appeal. The court below, in allowing an appeal in forma pauperis, admonished the appellant "to strictly follow the equity rules."

Respecting the question of the jurisdiction of the probate court in Montana, we are of the opinion that the record in that court does not contradict the recital in the order admitting the will to probate that due proof was made "that notice has been duly given of the time appointed for proving said will and for hearing said petition, according to law, to all parties interested." In Charlebois v. Bourdon, 6 Mont. 373, 377, 12 P. 775, 778, the court said: "If the record of the proceedings by which the judgment was obtained was silent, then everything necessary to the validity of the judgment and its verity would be conclusively presumed; but no such presumptions arise when the record of the proceedings shows affirmatively that the recitals contained in the judgment are untrue."

In the Montana probate record before us, it cannot be said the statement of the proceedings "shows affirmatively that the recitals contained in the judgment are untrue."

While the Supreme Court of Montana in a more recent decision held that "probate proceedings generally are quasi in rem," in which "notice to the heirs and others interested and an opportunity to be heard are essential" (Lamont v. Vinger, 61 Mont. 530, 542, 545, 202 P. 769, 773, 774), there appears nothing in that decision in conflict with the rule applied in the Charlebois Case, supra.

It is not questioned, however, that the Montana probate court had jurisdiction over the subject-matter; and we hold that the record establishes that the state court likewise had jurisdiction over the parties.

■ It next becomes necessary to inquire into the jurisdiction of the court below. All the devisees and legatees under William Montgomery's will should have been made parties defendant in the court below. We can find no justification in the record or in the briefs for this want of parties. The two brothers of appellant should have been included among the defendants. We will assume that Mrs. Montgomery, the widow of the decedent, is a party defendant, since her name was, by leave of court, included by interlineation among those of the other defendants.

In Bland v. Fleeman (D. C.) 29 F. 669, the syllabus, prepared by the court, states: "6. All the heirs to an estate of a decedent, in a suit against an administrator of such estate charging him with having fraudulently converted the assets of the estate, are necessary parties to such suit."

See, also, Hoe v. Wilson, 9 Wall. (76 U. S.) 501, 503, 504, 19 L. Ed. 762; Loomis v. Rosenthal (C. C.) 67 F. 369, 371; Carrau v. O'Calligan (C. C. A. 9) 125 F. 657, 671, 672, affirmed sub nom. Farrell v. O'Brien (O'Callaghan v. O'Brien), 199 U. S. 89, 25 S. Ct. 727, 734, 50 L. Ed. 101.

■ We come now to a consideration of the question of jurisdiction of a federal court to set aside the decree of a probate court of a state, in whole or in part. This is precisely what the appellant, in his complaint, prayed that the court below should do; that is to say: "That it be * * * decreed, so far as plaintiff is concerned, that the orders, judgments, and decrees of the district court of Beaverhead County, Montana, made and entered in the administration of the estate of William Montgomery, deceased, and complained of in this complaint, are illegal and that the same be held for naught in so far as they assume and purport to divest plaintiff of the ownership of the real estate described in the complaint."

The fundamental question of the lack of jurisdiction of an equity court to set aside probate proceedings is fully dealt with in the case of Simmons v. Saul, 138 U. S. 439, 446, 447, 459, 460, 11 S. Ct. 369, 376, 34 L. Ed. 1054. In that case the allegation and the prayer of the bill were similar to those now before us. It was alleged that the probate court that rendered the judgment was without jurisdiction; that its proceedings in the matter did not conform to the statute under the authority of which it assumed to act; that the judgment itself was obtained by a fraud upon the court; and that necessarily the pretended succession sale had in pursuance thereof, from which the appellee therein derived title to the lands with respect to which he committed the wrongs complained of, was illegal and void as to the complainants. The prayer of the bill was, inter alia, that the complainants might be adjudged and decreed to be the true legal representatives of the decedent; that the proceedings in the state court in relation to the sale of the land claim might be

adjudged null and void; that an account might be taken, by and under the direction of the federal court, of the timber and other products removed from the land by the defendant; and that the defendant might be decreed to pay to the complainants the highest value of the lands, etc. The charges of fraud in that case were no more sweeping than the ones now before us, and were such as would ordinarily move the conscience of the chancellor. Yet the Supreme Court, mindful of the narrow limitations of equity jurisdiction in probate matters, declined to interfere, and affirmed the decree of the lower court dismissing the bill, on demurrer.

The closing paragraphs of the opinion in Simmons v. Saul, supra, read:

"The case of Broderick's Will, 21 Wall. [88 U. S.] 503 [22 L. Ed. 599], upon this point is absolutely conclusive against the appellants. That was a bill in equity, brought by the alleged heirs at law of Broderick to set aside and annul the probate of his will in the probate court of California, and to recover the property belonging to his estate, or to have the purchasers at the executor's sale thereof, and those deriving title from them, charged as trustees for the benefit of complainants. The bill alleged that the will was forged; that the grant of letters testamentary and the orders for the sale of the property were obtained by fraud, all of which proceedings, as well as the death of the decedent, were unknown to the complainants until within three years before the filing of the bill. A demurrer to the bill was overruled, and the case was appealed to this court. It was held, Mr. Justice Bradley delivering the opinion, that a court of equity will not entertain jurisdiction to set aside the probate of a will, on the ground of fraud, mistake, or forgery, this being within the exclusive jurisdiction of the probate court; and that it will not give relief by charging the purchasers at the executor's sale, under the orders of the probate court, and those deriving title from them, as trustees, in favor of a third person, alleged to be defrauded by the forged or fraudulent will, where the court of probate could afford relief, in whole or in part.

"With the single exception that that case was brought to set aside the probate of a will, and this was brought to set aside the granting of letters of administration upon a succession, the two cases are as much alike as two photographs of the same person, the lineaments of the alleged fraud being more distinctly brought out in the bill in the case of Broderick's Will than in the bill in this case. Both were bills in equity, brought by the alleged heirs at law of a decedent to set aside and annul a decree of a court of probate, and all the subsequent proceedings, including the order of sale and the sale itself. Both alleged fraud in the procurement of the respective decrees, and knowledge of the fraud by the defendants,—actual knowledge in the Broderick Case, and constructive knowledge in this case. Both showed a long period of delay,—nine years in the Broderick Case, and eighteen in this case; and both set up ignorance of the facts as the excuse for laches; and in both cases, according to the averments of the bill in each, the probate court had adequate power to afford relief. See, also, Ellis v. Davis, 109 U. S. 485, 3 S. Ct. 327 [27 L. Ed. 1006]. We think the decision in that case is applicable to the whole of this case upon the question of fraud, and thus obviates the necessity of adverting any further to the question of the establishment of a trust, as against the defendant, in favor of the complainants."

See, also, Christianson v. King County, 239 U. S. 356, 372, 373, 36 S. Ct. 114, 60 L. Ed. 327; In re McDonald's Estate (D. C.) 42 F.(2d) 266, 268, 269; Dallas Bank & Trust Co. v. Holloway (D. C.) 50 F.(2d) 197, 198, 199; Grimes v. Grimes (D. C.) 52 F.(2d) 171, 177, 178; Carrau v. O'Calligan, supra, 125 F. 657, at pages 667, 668.

Bearing in mind the test of a probate court's exclusive jurisdiction laid down in Simmons v. Saul, supra, namely, that it should be able to "afford relief, in whole or in part," we turn to the Constitution and statutes of Montana for the measure of the probate court's power in that respect.

Under the Constitution of the state, the District Court has "original jurisdiction in all cases at law and in equity" and "of all matters of probate." Article 8, § 11. This language has been transported totidem verbis into section 8829 of the Revised Codes of Montana, 1921.

The Codes contain elaborate provisions governing "Probate Proceedings," consisting of 411 sections, grouped into 39 chapters. Section 10026 requires that copies of the notice of the time appointed for the probate of the will must be addressed to the heirs and executors of the testator. Section 10042 permits any person interested to contest the will or its probate at any time within one year after such probate. Section 10048 reads as follows: "If no person, within one year after the probate of a will, contest the

same or the validity thereof, the probate of the will is conclusive; saving to infants and persons of unsound mind a like period of one year after their respective disabilities are removed."

Sections 10235 and 10236 indicate the necessity for making all devisees and legatees parties to a suit under the will, which the appellant herein has failed to do. The former provides that the estate, real and personal, given by will to legatees or devisees, is liable for the debts, expenses of administration, and family expenses, in proportion to value. The latter sets forth that, when an estate is sold for payment of debts, all the devisees or legatees must contribute according to their respective interests. Section 10243 declares that an aggrieved party may recover, in an action on the executor's bond, or otherwise, for any neglect or misconduct. Section 10244 provides that any executor who fraudulently sells any real estate of a decedent "is liable in double the value of the land sold, as liquidated damages." By section 10245, the period of limitation for actions to recover any estate sold by an executor is fixed at three years from the date of the settlement of the executor's final account, while section 10246 provides that, as to minors, the period of limitation shall not commence to run before they reach their majority. According to section 10328, the probate court's order of distribution "is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." Section 10333 reads as follows: "The final settlement of an estate, as in sections 10318 to 10354 provided, shall not prevent a subsequent issue of letters testamentary or of administration, or of administration with the will annexed, if other property of the estate be discovered, or if it become necessary or proper for any cause that letters should be again issued."

And, in part, section 10352: "Where any trust has been created by or under any will to continue after distribution, the district court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trust."

From the foregoing it will be seen that the laws of Montana provide ample means for the revision and correction of probate decrees by the probate courts themselves.

The appellant, however, relies upon the following passage in Farrell v. O'Brien, supra, as giving the federal court jurisdiction of his suit: "Second. That where a state law, statutory or customary, gives to the citizens of the state, in an action or suit inter partes, the right to question at law the probate of a will or to assail probate in a suit in equity, the courts of the United States, in administering the rights of citizens of other states or aliens, will enforce such remedies."

Pursuing this argument, the appellant asserts that, under the doctrine of Hoppin v. Long, 74 Mont. 558, 241 P. 636, he "could have been and would have been granted the same relief by the District Court in Montana, sitting in equity." In that case the guardian of an insane woman alleged in his complaint that his ward had had no notice whatever of the proceedings in her son's estate. In the court's statement of the case, however, we find the following assertion: "* * * Where, as in this case, no mention is made in the petition [for distribution] of an heir laboring under such disability and residing without the state, the decree is certainly voidable on behalf of such an heir, and the statutory notice cannot bar her right to appeal to a court of equity for her day in court and the establishment of her rights, if any she has, in and to the property of the decedent, at least where title thereto remains in the original distributee; and in this case we need go no farther than this." 74 Mont. 558, 575, 241 P. 636, 643.

In the instant case different facts are presented. The appellant was a resident of Beaverhead county, Mont., at the time of the hearing of Gilbert's petition for letters testamentary, according to the allegation of appellant's own complaint, and the petition for the probate of the will set forth the appellant's name, kinship to the decedent, age, and address. These facts, in connection with the recital in the court's order admitting the will to probate, to the effect that "due proof" had been "made that notice (had) been duly given of the time appointed for proving said Will and for hearing said petition, according to law, to all parties interested," was sufficient to give the probate court jurisdiction in proceedings quasi in rem.

It is true that in Hoppin v. Long, supra, the Supreme Court of Montana stated that "the power of a court of equity to grant relief from a judgment obtained by fraud is inherent"; that such power "does not depend upon statute," and "extends to de-

crees of distribution in probate proceedings." 74 Mont. 575, 578, 579, 241 P. 636, 645.

But the Montana court added the following important limitation to its statement by quoting (74 Mont. 575, at page 579, 241 P. 636, at page 645) from the case of Clark v. Clark, 64 Mont. 386, 389, 392, 210 P. 93, 94, 95: "Not every fraud committed in the course of a judicial determination will furnish ground for such relief. The acts for which a judgment or decree may be set aside or annulled have reference only to fraud which is extrinsic or collateral to the matter tried by the court, and not to fraud in the matter on which the judgment was rendered. * * * What, then, is meant by the expression 'fraud which is extrinsic or collateral to the matter tried by the court?' It is extrinsic or collateral within the meaning of the rule, when the effect of it is to prevent the unsuccessful party from having a trial or from presenting his case fully, as, for instance, keeping him away from court by false promise of compromise, or purposely keeping him in ignorance of the pendency of the action, or where an attorney fraudulently pretends to represent a party and connives at his defeat, or, being regularly employed, sells out his client's interest (15 R. C. L. 763), or where a party residing without the jurisdiction of the court is induced by false pretenses or representations to come within the jurisdiction for the sole purpose of getting personal service of process upon him, or where, through the instrumentality of the successful party, the witnesses of his adversary are forcibly or illegally detained from court or bribed to disobey the subpoena served upon them, or where a judgment is obtained in violation of an agreement between the parties."

Appellant's complaint discloses no substantial allegation of "extrinsic or collateral" fraud, such as is illustrated in the foregoing excerpt.

Appellant has not made out a case for the intervention of a court of equity under the jurisprudence of Montana. It therefore follows, under the authority of Farrell v. O'Brien, supra, that the court below had no jurisdiction to entertain the suit, not only because of the want of necessary parties defendant, but also because of want of equity.

The court below dismissed the suit on the merits. While we are of the opinion that the dismissal should have been on jurisdictional grounds, it is well settled that an affirmance need not be based on the same grounds as those which influenced the trial court.

Decree affirmed.